## JOSEPH R. KENDALL *vs.* FREDERICK MAY.

Although a party to an action is insane, yet if he is competent to testify the other party may be admitted to testify in his own favor, under Gen. Sts. *c.* 131, § 14.

The finding of an auditor that an insane party to an action is competent to testify, and his admission of the other party to testify in his own favor, can only be controverted upon a hearing before the judge; and such hearing can only be had upon a motion addressed to the judge, prior to the trial before the jury.

If the guardian of an insane person has been removed and no new guardian appointed, one who at his request takes such insane person on a journey for pleasure out of the Commonwealth may recover of him the expenses thereof, provided that the jury find that they were reasonable and proper under the circumstances.

One who has long had the care of an insane person and provided for his table, and has been on several occasions and for a considerable period of time in another family while he was afterwards boarding there, may testify to an opinion as to the value of boarding and taking care of him in the latter place.

CONTRACT against an insane person to recover for board furnished and services rendered to him, and expenses incurred for him.

The items of the plaintiff's account were quite numerous, and the case was referred to an auditor, who reported, among other things, that the plaintiff offered himself as a witness, and that the defendant, who appeared by his guardian and counsel, objected on the ground that the defendant was insane; but the auditor, after hearing testimony upon the subject, found that the mental condition of the defendant was not such as would incapacitate him from being a witness, and therefore held that Gen. Sts. *c.* 131, § 14,* did not apply to this case, and admitted the plaintiff to testify.

At the trial in the superior court, before *Brigham*, J., the plaintiff offered the auditor's report in evidence. The defendant objected to its admission, and offered to prove by medical experts that the defendant was insane at the time of the hearing before the auditor, and also at the time of the trial; but the

---

* This section, after enacting that parties in civil actions and proceedings shall be admitted as competent witnesses, provides " that where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party shall not be admitted to testify in his own favor."

judge excluded the evidence, and allowed the auditor's report to be read.

It appeared in evidence that the defendant was fifty-seven years of age; that he was of unsound mind, though capable of enjoying to some extent many pleasures and luxuries; that he was possessed of property to the amount of about $200,000, which yielded an annual income of from $10,000 to $12,000; that his near relatives were a brother and a married sister; that in 1844, at the death of his father, from whom he inherited his estate, he was decreed by the probate court to be *non compos mentis,* and was put under the guardianship of Joseph Ballard, who continued to be his guardian until he was removed by a decree of this court on the 17th of December 1862; that shortly after another guardian was appointed by the probate court, but the decree appointing him was reversed by this court, and on the 23d of June 1863 F. W. G. May, the present guardian, was appointed as guardian; that on the 3d of December 1862 the defendant was residing in Woburn, at the house of one Barrett, where he had been put by Ballard about three years before; that on that day the defendant left Barrett's house of his own accord, and applied to the plaintiff to take him into his own house and furnish him with board; that the plaintiff did so, and in February, at the defendant's request, the plaintiff and his wife went with the defendant on a journey of three weeks to Washington and other places out of this commonwealth, and the expenses of this journey are included among the items of charge now in suit. It did not appear that the plaintiff was authorized by any court, or by Ballard, or by the defendant's near relatives, to furnish the plaintiff with board or to take him upon the journey.

The defendant introduced evidence tending to show that suitable accommodations were provided and kept at Barrett's, to which the defendant might have returned at any time while he was at the plaintiff's house. The plaintiff introduced evidence tending to show that the defendant was discontented at Barrett's, and that he was more happy at the plaintiff's house, and that the keeping of the defendant at Barrett's was one ground of complaint against Ballard, when his removal was sought.

**The** evidence was conflicting as to the value of the board furnished by the plaintiff. Sarah E. Skinner, a witness for the plaintiff, after testifying that the defendant boarded for many years in her mother's family, and that she herself had charge of him from 1853 to 1859 and during that time provided everything for his table, and that she now had charge of him, and that she was at the plaintiff's house on several occasions, and at one time several weeks, while the defendant was living there, was allowed, against the defendant's objection, to testify what in her opinion it was worth to board and take care of him at the plaintiff's house.

The defendant requested the court to instruct the jury that, under the circumstances proved, the journey taken by the defendant out of the state was not reasonably necessary for him, and that the plaintiff could not recover the expenses thereof; that the plaintiff could not properly take the defendant on a journey for pleasure out of the state, without the sanction of his former guardian, or of the court, or of his relatives; and that he could not recover for supplies furnished to the defendant unless Ballard neglected to provide reasonable supplies.

The judge declined so to rule, and instructed the jury that, to entitle the plaintiff to recover, the facts should show a necessity on the part of the defendant to which he in good faith had ministered; that this is not an absolute necessity, but a need which, considering the pecuniary ability, and physical and mental condition of the person, might be safely, reasonably and properly ministered unto, to promote his comfort, health and pleasure; and that if living at Barrett's caused him unhappiness, and he left there and went to the plaintiff's, and was there furnished with suitable board and attendance, the plaintiff might recover.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. C. Davis,* for the defendant. When an auditor's report appears to have been founded on incompetent evidence, it should be rejected. *Putnam* v. *Dutton,* 8 Verm. 399. *Kendrick* v. *Tarbell,* 27 Verm. 512. *Boston Water Power Co.* v. *Gray,* 6 Met. 166. *Ward* v. *American Bank,* 7 Met. 489. *Jones* v. *Stevens,* 5

Met. 377. The adjudication of the probate court appointing the guardian, and of the superior court admitting him to appear and defend the action, were conclusive evidence of the defendant's insanity. *White* v. *Palmer*, 4 Mass. 147. *Leonard* v. *Leonard*, 14 Pick. 284. The auditor's construction of Gen. Sts. *c.* 131, § 14, was erroneous. Many insane persons are competent to testify. 1 Greenl. Ev. § 365. *Fennell* v. *Tait*, 1 Cr., Mees. & R. 584. *Regina* v. *Hill*, 2 Den. C. C. 254. But such witnesses can testify ordinarily only to certain classes of facts. They may be able to appreciate and retain facts of the simplest kind, but numerous and complicated details, or facts happening at remote periods, become confused or entangled in their minds, or fade from them. And they are easily embarrassed, and are liable to be perplexed and disconcerted by questions of opposing counsel and the formalities of a trial, and betrayed into contradictions, and most of them are subject to the control of unfounded likes and dislikes, which impair the value and effect of their testimony. The statute was passed in view of the rule of law, which makes some insane persons competent to testify. It was intended to protect all insane persons.

Evidence was competent to control the auditor's finding, as to the defendant's capacity to testify. The report was only *prima facie* evidence. It was not necessary to raise the question before the trial. The defendant had no duty to do, in this respect, till the report was offered in evidence. He did not wish to have the report recommitted for a new finding by the auditor upon the matter.

The plaintiff, under the circumstances in which he stood towards the defendant, had no right to take the latter on a journey merely for pleasure, out of the Commonwealth. If he might take such a journey to Washington, he might also to Europe. See *Deerfield* v. *Greenfield*, 1 Gray, 514.

*T. H. Sweetser*, ( *W. S. Gardner* with him,) for the plaintiff.

CHAPMAN, J. It appears that the defendant is and for a long time and perhaps always has been a person of unsound mind. On the death of his father in 1844, from whom he received a large estate, he was placed under guardianship as a person *non*

*compos mentis.* His guardian was dismissed in December 1862, and a new guardian was appointed in June 1863. About the time when the first guardian was dismissed, the defendant applied to the plaintiff to take him into his family. The plaintiff did so, and provided for him until the second guardian took charge of him. This action is brought to recover for the board and services thus furnished and the expenses of a journey.

The first question that arises in the case was originally made at the hearing before the the the auditor. The plaintiff offered himself as a witness to prove his account. The defendant's counsel objected that he was not a competent witness under the provisions of Gen. Sts. *c.* 131, § 14, because the defendant was insane. The auditor overruled the objection, because upon due hearing he found as a fact that the mental condition of the defendant was not such as would incapacitate him from being a witness. The defendant's counsel contends that this ruling was erroneous; that the appointment of a guardian by the probate court, and the leave granted by the superior court to the guardian to appear and defend this action, were conclusive evidence of the insanity of the defendant, and that his mere insanity excludes the plaintiff from testifying.

There can be no doubt that where one party is insane to such a degree as to exclude him from being a witness, the statute does not intend to admit the other party. But it is not every degree of insanity that has this effect.

This question was thoroughly considered in *Regina* v. *Hill*, 15 Jur. 471, the same case being also reported in several other books. On the trial of an indictment for manslaughter, Coleridge, J. admitted a witness to testify who was brought into court from a lunatic hospital, and who labored under the delusion that he was possessed of twenty thousand spirits. In the court of criminal appeal this ruling was affirmed by Lord Campbell, C. J., Platt, Talfourd and Coleridge, JJ. The rule as they state it is, that it is for the judge to satisfy himself whether the witness understands the nature of the oath and is capable of testifying. He then decides upon the competency of the witness, and if he admits him it is left to the jury to estimate the value of his testimony.

This is the only rational and just rule that can be adopted. Insanity exists in various degrees. Modern investigations have shown that it exists much more extensively than was formerly supposed, and that persons who are affected to such an extent that it is expedient to place them in insane hospitals or under guardianship often possess sufficient knowledge of the nature of an oath and of events that took place in their presence to make them useful and trustworthy as witnesses. A rigid rule that would exclude the testimony of all such persons as untrustworthy witnesses would not be conformable to facts, and therefore would not be founded in good sense. Nor would such a rule promote justice. It would leave insane persons needlessly unprotected in hospitals and elsewhere, and would deprive the public and individuals of their testimony in cases where it might be important and valuable. In commenting upon such a rule, Talfourd, J. remarked that Luther supposed he had conferences with the devil, and Dr. Johnson entertained delusions respecting his mother. Lord Campbell said that Socrates would not have been a witness under it, for he believed that a spirit always haunted him. In the case of *Commonwealth* v. *Reynolds*, which was an indictment for murder tried in Bristol in 1863, this court admitted an insane person to testify, adopting the principle laid down in *Regina* v. *Hill.* In *Leonard* v. *Leonard*, 14 Pick. 280, it is said that an insane person under guardianship may make a will, if of sufficient capacity. The reason for allowing him to testify, if he understands the nature of an oath and the facts which he relates, is at least as strong as for allowing him to make a will. The auditor therefore decided correctly the question of law in respect to the competency of an insane person to testify.

But having decided this, a question of fact was presented to him, namely, whether the defendant had in fact sufficient capacity to testify. He decided this question in the affirmative, upon the evidence before him.

Assuming then that the defendant was competent to testify he ruled that the plaintiff could testify under the statute. We think he also ruled this legal point correctly. The object of the

statute is to make each party competent when the other is so, and not otherwise. Thus, if one party is dead, the other is excluded. If one is insane, the other is excluded; but the fair interpretation of the word "insane" is to be found by applying it to the subject matter. If he is so insane that he cannot be permitted to testify, he is within the reasonable interpretation of the statute, but not otherwise.

The auditor having made his report, it is made by statute *prima facie* evidence, and nothing more. The finding as to this fact of the capacity of the defendant to testify is not conclusive, but *prima facie* only.

In respect to the other facts found by the auditor, the report was to be submitted to the jury, and the evidence to contradict the report must be also addressed to them. But it was not so as to this fact; for the capacity of a witness to testify is not a fact that is ever submitted to the jury, but is always decided by the court.

When a question as to the admissibility of evidence is presented to the judge, he is often bound to hear and decide a collateral issue of fact, as whether a communication is confidential, or a witness is of sufficient capacity. *Cleave* v. *Jones*, 7 Exch. 421. It would be impracticable to submit these collateral issues to the jury. The auditor's finding on the point of capacity was to be affirmed or disaffirmed in this case by the judge, upon evidence to be presented to him. If it was affirmed, then the report was to be read to the jury; but if it was disaffirmed, it would not follow that the report was to be rejected, and the cause tried as if no report had been made; but the report should be recommitted for amendment, and for further hearing if necessary.

If either party desires to have a report recommitted on account of an erroneous finding of the auditor, he ought to make his motion seasonably, so that the recommitment may be made, and the report corrected before the trial. Otherwise the trial must be broken off, or the report excluded, and the cause tried without it. But the object of the statute is to aid the court and jury by obtaining the report of an auditor, and it is not in

the power of either or both the parties to exclude it. The court may require it to be read. *Clark* v. *Fletcher*, 1 Allen, 53. If then either party desires to have the report corrected, on account of any error of fact or of law, he should move the recommitment, and have his objections settled before the cause goes to trial. To allow it to be done after the trial has commenced would create unreasonable inconvenience and expense, unless for good reasons which are satisfactory to the presiding judge. If no such reasons are presented, the objection should be considered as waived.

In the present case, the defendant's counsel objected to the admission of the report, and offered to prove by medical experts that the defendant was insane at the time of the hearing before the auditor, and also at the time of the trial. There was no motion to recommit the report, but merely to reject it. If the motion had been granted, the cause would have been tried to the jury, respecting an account containing a great number of items, and without the aid of an auditor's report. This would thwart the whole purpose of the statute. We think the court properly denied the motion to **reject** the report, and properly refused to hear evidence at that stage of the proceedings on the question whether the auditor had properly decided that the defendant was competent to testify.

The judge properly refused to instruct the jury that the journey taken by the defendant out of the state was not reasonably necessary for him, and that the plaintiff could not properly take him on a journey for pleasure out of the state without the sanction of his former guardian, or of the courts, or of his relations. His former guardian had nothing further to do with him. The interest of his relations was to keep his expenses as small as possible, in order that his property might be preserved for them or their children ; and no court could determine beforehand what was proper to be done. The plaintiff incurred the risk of being able to satisfy a jury that the charges were reasonable and proper. The fact that the former guardian had provided rooms and necessaries for the ward was not material. The defendant's property amounted to about $200,000. If he had been *compos*

Kendall *v.* May.

*mentis* he would have had a right to use it to supply himself with luxuries, and to gratify his tastes and fancies, and even his whims. The fact that he was *non compos* made it proper to place him under guardianship, so that his estate should not be wasted, and he should not be left to suffer. But the object was to preserve it for his own use, and his own enjoyment of it should be considered as paramount to everything else. If without harm to himself he could enjoy luxuries and gratify his tastes and fancies, he ought to be indulged in such enjoyments to a reasonable extent. If he enjoyed journeys, it was proper that he should be indulged in them. If he preferred the society of some persons over that of others, that preference should be reasonably regarded and indulged. The interest which his heirs may have in the accumulation of his estate is to be wholly disregarded, when it comes in competition with his own happiness or innocent pleasure. It appears that he is capable of enjoying, to some extent, many pleasures and luxuries, and that he has preferences as to the place of his residence and his associates. Humanity and his right to his own property require that he should not be restrained or thwarted in his preferences and enjoyments, more than is necessary for his own welfare. *In re Persse*, 3 Molloy, 94, the Lord Chancellor said: " The maintenance of a lunatic is not limited as an infant's is, within the bounds of income. It is not limited except by the fullest comforts of the lunatic. Fancied enjoyments and even harmless caprice are to be indulged up to the limits of income, and for solid enjoyments and substantial comforts the court will, if necessary, go beyond the limits of income." In this commonwealth it is not thus limited in respect to an infant, and there is, therefore, less reason for limiting it in respect to a person of full age. The instructions of the court in regard to the allowance of the plaintiff's claims were correct in respect to these matters.

The opinion of Sarah E. Skinner as to what it was worth to board and take care of him was properly admitted. Opinions on questions of value, by persons who are acquainted with the subject as to which they testify, are always received. Her testimonr shows that she had ample opportunity to form an opinion

*Exceptions overruled.*