# Commonwealth *v.* Loomis, Appellant.

*Criminal law—Murder—Notes of testimony at former trial—Act of May 23, 1887, P. L. 158—Insane witness—Act of March 31, 1860, P. L. 427—Appeals—Objections made below.*

1. Ordinarily, a party complaining on appeal of the admission of testimony will be confined to the specific objections made below. When, however, the record is not clear as to the ground on which the complaint is based, this rule does not apply.

2. The appellate court will not be assiduous to discover technical defects, as against a prisoner appealing in a homicide case.

3. The notes of testimony of a witness at a former trial may, under the Act of May 23, 1887, P. L. 158, be offered subsequently, if he has become incompetent to testify for any legally sufficient reason properly proven.

4. A lunatic is admissible as a witness, if he has sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters involved in the questions at issue. Whether he has such understanding is a question to be determined by the court.

5. The testimony of a witness at the first trial of an indictment for murder, will not be admitted at the second trial, where his incompetency is merely shown by an adjudication of insanity and commitment to an insane asylum. There must be further proof of his actual mental condition and incompetency at the time of the second trial.

6 The judgment of a court finding one of unsound mind, is never conclusive that he remains so; much less is it conclusive that his condition continues so as to disqualify him as a witness in his own or another's behalf.

7. Section 3 of the Act of May 23, 1887, P. L. 158, permits the use of notes of testimony in criminal cases when the party is proven to be incompetent, and not merely where he has been adjudged a lunatic.

8. Section 66 of the Act of March 31, 1860, P. L. 427, provided merely for the determination of the question whether the prisoner was mentally competent to make a rational defense. The statute did not contemplate a conclusive determination of insanity.

*Criminal law—Murder—Evidence—Finger-prints — Limitation of scope of proof—Res gestœ.*

9. A person should be allowed to prove a fact which would logically produce a doubt of his guilt in the mind of the jury.

10. Facts may be proven not only to show the commission of the crime by another, but to negative the presence of some circumstances connected with the res gestæ which would probably be present were the defendant guilty. Such negative evidence may raise a strong presumption of innocence.

11. Where on the first trial of an indictment for murder, the Commonwealth produces proof tending to show that the murder was committed in the perpetration of a robbery, and evidence is admitted that certain finger-prints on a box were those of the prisoner, but at a second trial the Commonwealth admits that the finger-prints were not those of the prisoner, it is reversible error for the trial court, in permitting the prisoner to show that the prints were not his, to limit the purpose of the proof solely to the impeachment of the credibility of a witness for the Commonwealth.

12. In such case the prisoner was entitled to have the evidence admitted and treated as furnishing proof of a substantive fact. If it had been given its full scope, the jury would have been justified in taking into consideration that some one else handled the box either at or about the time of the murder.

13. Special latitude is permitted in the admission of evidence where the proof, upon which the Commonwealth depends, is circumstantial.

Argued March 7, 1921. Appeal, No. 215, Jan. T., 1921, by defendant, from judgment of O. & T. Northampton Co., April T., 1918, No. 76, on verdict of guilty of murder of the second degree, in case of Commonwealth v. Robert M. Loomis. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Indictment for murder.   Before STEWART, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree, on which sentence was passed.   Defendant appealed.

*Errors assigned,* among others, were (2, 3, 4) rulings and instructions as to the effect to be given to the evidence relating to finger-prints, and (14) admission of Shrope's testimony given at former trial.

*Robert A. Stotz,* with him *A. C. La Barre, Fred E. Geiser* and *Samuel W. Cooper,* for appellant, cited as to finger-print evidence: McHugh v. McHugh, 186 Pa. 197; Frick v. Barbour, 64 Pa. 120; Stevenson v. Stewart, 11 Pa. 307; Brown v. Schock, 77 Pa. 471.

*T. McKeen Chidsey,* District Attorney, and *Charles P. Maxwell,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE SADLER, April 18, 1921:

The facts surrounding the killing of Bertha Meyers were narrated in an opinion filed by this court, when a former appeal by the defendant from a conviction of first degree murder was considered (Com. v. Loomis, 267 Pa. 438), and the details need not be repeated.   Complaint is now made of alleged errors in the second trial, which terminated in a verdict of murder of the second degree.

One Shrope had been indicted for the same crime, and became a witness for the State at the first hearing of Loomis in 1918, at which time the former was examined.   Subsequently, he entered the plea of non vult contendere, and the sentence imposed was, as a result, set aside on appeal: Com. v. Shrope, 264 Pa. 246.   In 1919, he was again called for trial, but his case was not heard, a jury finding that he was then insane and unable to conduct his defense.   This adjudication, with the commitment to the insane asylum which followed, was

based upon the 66th section of the Criminal Procedure Act (Act March 31, 1860, P. L. 427). He was still in confinement in 1920, when Loomis was brought to his second trial.

In the present case the Commonwealth offered in evidence the testimony of Shrope taken at the first Loomis hearing, to show guilt upon the part of the defendant. This was admitted, against the objection that Shrope was insane when he first testified, and, on the further ground that the defendant was entitled to have the witness brought face to face with him in open court. It is not certain whether by this it was intended to insist that the Act of 1887, permitting the use of the former testimony, was unconstitutional, or that the witness must be produced unless proper proof of his incompetency appeared. Ordinarily, the party complaining on appeal of the admission of testimony will be confined to the specific objections made below: Roebling & Sons Co. v. American A. & C. Co., 231 Pa. 261. When, however, the record is not clear as to the ground on which the complaint is based, this rule does not apply: Scott v. American Express Co., 257 Pa. 25; Kuhn v. Ligonier Valley R. R. Co., 255 Pa. 445. The court will not be assiduous to discover technical defects, where such grave issues are involved as in homicide cases: Com. v. Filer, 249 Pa. 171. The real controversy before us is sufficiently embraced within the fourteenth assignment of error.

The learned court below received testimony to show the mental condition of Shrope when a witness in 1918, but overruled the objection to the admission of his former evidence because he was then insane, since such proof was not sufficient to disqualify, unless it further appeared that the disease was of a character, and so far progressed, as to render the witness incapable of understanding the nature of an oath, and of intelligently testifying as to facts he had observed. The principle involved was correctly stated, as will be hereafter noted; but the court fell into error when it failed to apply the

same rule in passing upon the question whether Shrope was incompetent when his former testimony was offered in 1920. Its conclusion was based apparently on the adjudication of lunacy in 1919, and the admitted fact of insanity at the time of the second Loomis hearing.

The notes of testimony of a witness at a former trial may be offered subsequently, where the same criminal issue is involved, "if he [has] become incompetent to testify for any legally sufficient reason properly proven": Act May 23, 1887, P. L. 158, sec. 3. Incompetency does not necessarily follow from insanity; "that is not enough per se to exclude him; but he must at the time of his examination be so under the influence of his malady as to be deprived of that 'share of understanding' which is necessary to enable him to retain in memory the events of which he has been witness, and give him a knowledge of right and wrong. If at the time of his examination he has this share of understanding, he is competent": Coleman v. Com., 25 Gratt. (Va.) 875. "The general rule, therefore, is that a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; and whether he have that understanding is a question to be determined by the court, upon examination of the party himself, and any competent witnesses who can speak to the nature and extent of his insanity": District of Columbia v. Armes, 107 U. S. 521; Kendall v. May, 92 Mass. 59; Evans v. Hettich, 7 Wheaton 470; Worthington v. Mencer (Ala.), 17 L. R. A. 407; Draper's Est., 20 Phila. 25.

The Commonwealth contends that the incompetency was here shown by the adjudication of Shrope's insanity, and his commitment to the insane asylum, but proof of these facts was not sufficient. "The judgment of the court, finding one of unsound mind, is never conclusive that he remains so; much less is it conclusive that his

condition continues so as to disqualify him as a witness
in his own or another's behalf": Covington v. O'Meara,
133 Ky. 763; Barker v. Washburn, 200 N. Y. 284; Breed-
love v. Bundy, 96 Ind. 319; Reeves v. State, 186 Ala. 14;
Hicks v. State, 165 Ind. 440. It may be observed that
section 3 of the Act of 1887, permits the use of notes of
testimony in criminal cases when the party is proven to
be incompetent, and not where he has been "adjudged a
lunatic," as is provided in section 5, clause (e), regu-
lating the admission of testimony of surviving parties.

In the present case, there was no general finding of
insanity under the provisions of the Act of June 13,
1836, P. L. 592. The adjudication was based upon sec-
tion 66 of the Criminal Procedure Act; the purpose of
which proceeding was merely to determine whether the
prisoner was mentally competent to make a rational de-
fense: Com. v. Simanowicz, 242 Pa. 403; 16 C. J. 792.
That statute did not contemplate a conclusive deter-
mination of insanity: cf. Goodwin v. State, 96 Ind. 550;
People v. Farrell, 31 Cal. 576. In discussing the effect
of a commitment of a proposed witness to an asylum, the
court, in State v. Brown (Del.), 36 Atl. 458, 461, said in
part: "The claim that the certificate itself affords a
prima facie presumption of insanity to that extent is
not warranted by either the purpose of the statute or the
tenor of the certificate. The design of both is merely to
provide for the admission of proper cases for care and
treatment in this public hospital, and to exclude all
others. In purpose or effect, it never was the legislative
design to pass upon either the competency of a witness
or the responsibility of one charged with crime;......
'insanity' as used in the certificate, may mean any form
or degree of mental derangement, greater or less, which
may, in the statutory contemplation, be proper for care
and treatment in the hospital; it follows that said cer-
tificate does not necessarily warrant the presumption
that the patient named therein is mentally incompetent

to testify in any case.   Therefore, additional evidence
is necessary to establish such incompetency."

The only effect of the adjudication in Shrope's case was
to prevent his immediate trial, and, in itself, was not suf-
ficient to show him incompetent, so as to justify the ad-
mission of the notes of the former trial without further
proof as to the actual mental condition of the witness.
The same conclusion would be reached though the finding
were treated as prima facie evidence of insanity; for, as
already noticed, proof of that fact is not in itself suffi-
cient.   If actual incompetency had been shown, then the
former testimony could have been received, for an exami-
nation of the records shows an ample opportunity to
cross-examine on the former trial, and, under such cir-
cumstances, it could not be said that the defendant was
deprived of any substantial right: Com. v. Cleary, 148
Pa. 26; Com. v. Keck, 148 Pa. 639.

Great harm may have been done in submitting
Shrope's story to the jury through the medium of his
former testimony, rather than in person.   Had a pre-
liminary investigation been made to show the possibility
of his appearance, notwithstanding his mental disturb-
ance, it would have revealed, as appeared from the testi-
mony of the superintendent of the hospital, that he was
much better, and was at that time in a "state of remis-
sion"; during which period, Dr. Lynch stated, he could
give a "perfectly lucid statement."   It is further to be
noted that there was admitted in evidence a statement
concerning the crime made by Shrope while this trial
was in progress.   Before receiving the same, in answer
to a question of the court, the alienist testified that,
though Shrope was insane, he then had "ability to re-
member and describe what he [had] heard."   If this was
true, the witness could not be said to be incompetent;
and, if his evidence was desired,—and without it no con-
viction could have been had,—he should have been pro-
duced.   Error was committed in the admission of the
former testimony without the proof of Shrope's present

incompetency. The fourteenth assignment must, therefore, be sustained.

Another complaint appearing upon the record requires consideration. It was the theory of the Commonwealth that the deceased was murdered in the perpetration of a robbery. A description of the occurrence appeared in the testimony of Shrope, who told of the forcible opening of a tin box by Loomis, illustrating at the first trial how it was held by defendant. At this second hearing, the former evidence of Shrope was admitted. A witness was called who detailed how Shrope had held the box, when explaining to the jury on the former occasion the manner in which it was grasped by Loomis. Upon it were several marks, one a finger-print at a point corresponding with the place designated as that at which it was held by Loomis. At the first trial, experts had identified the finger-print as that of the defendant. When the case was called a second time, this position was abandoned, and the Commonwealth offered no evidence in regard to it, admitting that the mark was not that of Loomis.

The defendant was then permitted to show that the finger-print was not made by him, not as furnishing proof of any substantive fact by which to prove or disprove the matter in issue, but solely to impeach the credibility of Shrope. This limitation was emphasized in the charge, and the correctness of the view taken by the learned court is now the subject of question, raised by the second and third assignments of error. The same proposition is suggested in the fourth, based on the answer to the ninth point of the defendant, but this request could not have been affirmed, as binding instructions were asked.

In a criminal case, a defendant cannot establish facts which awaken mere conjectures; his admissible proof must be such as is calculated to fairly raise a doubt as to his connection with the transaction. On the other hand, nothing connected with the crime should be excluded

from the consideration of the jury whether the tendency is to inculpate or to exonerate the party who is accused. "It may be laid down that in no case is evidence to be excluded of any fact or circumstance connected with the principal transaction from which an inference as to the truth of a disputed fact can reasonably be made": 8 R. C. L. 180. Special latitude is permitted in the admission of evidence, where the proof upon which the Commonwealth depends is circumstantial: Ward v. The State (Tex.), 158 S. W. 1126; Alexander v. United States, 138 U. S. 353. Wigmore (volume 1) on Evidence, section 139), in discussing the principle involved, says: "If the evidence is really of no appreciable value, no harm is done in admitting it; while, if it is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic, but should afford the accused every opportunity to create that doubt. A contrary rule is cruel to a really innocent accused."

A defendant should be allowed to prove a fact which would logically produce a doubt of his guilt in the mind of the jury. The remoteness of the testimony offered, or its significance in furnishing aid in deciding the fact to be found must, of course, be subject to the control of the court: Com. v. Ryan, 134 Mass. 223; Alexander v. United States, supra. Facts may be proven not only to show the commission of the crime by another, but to negative the presence of some circumstances connected with the res gestæ which would probably be present were the defendant guilty. So, it is proper for him to put in evidence the clothes worn at the time of a murder, accompanied with the spilling of large amounts of blood, as some proof of the fact that he was not the assassin: People v. Jackson, 182 N. Y. 66. Such negative evidence may raise a strong presumption of innocence: 1 Wharton on Criminal Evidence, 869, and cases cited. Likewise, a defendant is entitled to prove facts which do not in themselves establish innocence, but which corrobo-

rate the denial of guilt expressed under oath. He has the right to fortify his own testimony by any and all circumstances and facts fairly tending to support him : Chitwood v. United States (C. C. A.), 153 Fed. 551.

In the present case, the Commonwealth insisted that the killing was the result of a robbery. The tin box, which had been forcibly opened, was handled by someone, and around the rifling of it the case against the defendant was largely built. It was offered as part of the res gestæ at the first trial, and the finger-print found thereon was proven to be that of Loomis; at the second trial it was in evidence, but the Commonwealth admitted that the mark was not that of the defendant. Loomis denied that he had handled the box or committed the robbery, and it was some corroboration of his story to prove that the finger-print was not made by him. This might have little effect upon the jury, in view of the presence of the other blurred marks upon the box, but the defendant was entitled to the benefit of any reasonable doubt it might raise. If weight is to be given finger-print testimony (State v. Kuhl (Nev.), 175 Pac. 190; People v. Jennings, 252 Ill. 534; People v. Roach, 215 N. Y. 602), then the jury, in passing upon the guilt of Loomis, would be justified in taking into consideration the fact that someone else handled the box either at or about the time of the murder. The testimony was not objectionable on the ground of remoteness, and, though possibly not throwing much light upon the guilt or innocence of the defendant, yet, on a trial for his life, he was entitled to the benefit of any reasonable doubt which it might raise in the mind of the jury. It should have been permitted to consider this fact, with all the other evidence in the case, in passing upon the matter at issue. Assignments two and three are, therefore, sustained.

In view of the conclusion reached, the other assignments of error need not be discussed.

The judgment of the court below is reversed, and a venire facias de novo is awarded.