## Commonwealth *v.* Mozzillo, Appellant.

Argued November 18, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and POMEROY, JJ.

*Irving W. Backman,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Steven H. Goldblatt,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 28, 1971:

The appellant, Samuel Mozzillo, was indicted as of November Term, 1962, on charges of murder and arson. The charges concerned the death of Philip Fromenko, an eight-month old infant who died in a fire on October 20, 1962, at an apartment house in Philadel-

phia, where both he and the appellant lived. During the police investigation of the incident, appellant gave certain self-incriminating statements which were later suppressed as inadmissible at trial.

In December, 1962, a lunacy commission examined the appellant and found him to be sane. In March, 1963, appellant's attorney petitioned for the court appointment of a psychiatrist to help in the preparation for trial. At that time the appellant's attorney believed that appellant, who was an epileptic and had been hospitalized for a seizure shortly before the fire, might have had a seizure at the time of the fire. The psychiatric examination confirmed that appellant suffered from epilepsy. Moreover, the appellant was found to have an IQ of 59. However, the psychiatric examination of the appellant did not reveal any evidence of "mental disease."

Nevertheless, because of the convulsive disorder and the low IQ, the psychiatrists recommended that the appellant be committed to the state institution at Dallas as incompetent to stand trial since he was "not competent to confer with counsel in the preparation of his trial or to testify in his own defense." The assistant district attorney agreed with the recommendation of the psychiatrists and appellant's attorney prepared the commitment forms under Section 1225 of the Mental Health Act. On July 30, 1963, the court signed an order committing appellant to the Dallas Institution for Mental Defectives.

On October 28, 1966, following a petition for a writ of habeas corpus, appellant was ordered transferred to the Philadelphia State Hospital (Byberry) pending a psychiatric examination for the purpose of determining whether appellant was competent to stand trial. Appellant was instead transferred to Holmesburg prison on October 28, 1966. On December 5, 1966, appel-

lant was examined by Dr. Kenneth Kool, who was at that time the Medical Director of the Psychiatric Division of the Probation Department. Dr. Kool found that the appellant was competent to stand trial and to cooperate with counsel. In due course appellant was brought to trial.

On May 4, 1967, a jury returned a verdict of guilty of murder in the first degree, and after further deliberation fixed the penalty at life imprisonment. This case comes to us on direct appeal from that sentence.

The evidence which the Commonwealth presented to the jury clearly established that the victim died in the fire at the apartment house, that the fire originated from the hallway outside of the appellant's apartment while appellant was in the building, and that the fire was incendiary in origin. The Commonwealth then offered the testimony of Stanley A. Gabriel, a guard at the State Correctional Institution at Dallas, who had supervised the cell block where the appellant was incarcerated during 1965 and most of 1966. Gabriel testified that on at least twelve different occasions appellant had bragged to him and appellant's fellow inmates that he was at Dallas for murder and arson, that he had burned down an apartment building using a container full of gasoline and wooden matches to set it afire, and that there was somebody in the building at the time that it was burned.

The appellant's admissions were somewhat corroborated by the testimony of a police detective to the effect that there was a box of wooden matches in one of appellant's pockets when he was arrested.

Appellant first contends that the evidence was not sufficient in law to meet the requirements for submission to a jury. We do not agree.

As we said in *Commonwealth v. Leslie*, 424 Pa. 331, 227 A. 2d 900 (1967), quoting *Commonwealth v. Nasu-*

*ti,* 385 Pa. 436, 123 A. 2d 435 (1956) : "For a conviction in an arson case, three facts must be established: (1) that there was a fire; (2) that it was of incendiary origin; (3) that the defendant was the guilty party."

We went on to explain in *Leslie* that the Commonwealth was not required to establish independently all elements of the charge. It was enough for the Commonwealth to show independently that a fire occurred and that the burning was of incendiary origin. Then admissions or confessions of the accused could be received as proof of the identity of the guilty party. *Leslie, supra,* at page 335.

Here, there was competent independent proof of the baby's death in the fire and the fire's incendiary origin before proof of the appellant's admissions at Dallas was offered into evidence. Those admissions clearly established that the appellant set the fire. If those admissions were properly received into evidence, then the verdict against the appellant can be supported.

Appellant contends that the testimony concerning his admissions should not have been received into evidence. Appellant emphasizes that these admissions were made after appellant had been declared incompetent to stand trial in 1963 but before he was found competent in 1966.

In his testimony, Gabriel, the guard who testified as to appellant's admissions, made it quite clear that he did not elicit the admissions from the appellant. Gabriel not only did not question appellant, Gabriel did not even know that the appellant had not yet been tried. Rather, in the case of each admission the appellant had voluntarily and spontaneously bragged of his accomplishments. Thus, we are not faced with a confession and the attendant question of whether the appellant was competent to waive his constitutional rights against self-incrimination without the advice of

counsel. Instead, appellant's competency to make these admissions is governed by rules of testimonial capacity which in turn are principally concerned with trustworthiness. As we explained in *Commonwealth v. Kosh*, 305 Pa. 146, 157 Atl. 479 (1931), at page 156: ". . . [I]ncompetency does not necessarily follow from insanity. The general rule is that a lunatic or a person affected with insanity is admissible as a witness if he has sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions as issue." Citing *Commonwealth v. Loomis*, 270 Pa. 254, 113 Atl. 428 (1921).

Here, there is no insanity since appellant was at no time found insane and was, in fact, found sane by a lunacy commission on December 21, 1962. Moreover, there is no question of his understanding of an oath since his admissions were not taken under oath but were considered competent and admissible as exceptions to the hearsay rule because they were admissions against interest. Thus, the only questions which must be considered in analyzing appellant's mental health at the time of his admissions were whether his memory, his thinking processes or his orientation to reality made it likely that his admissions were untrue.

The court below relied on the testimony of Dr. Kool, who performed a psychological examination on appellant on December 5, 1966, to the effect that appellant's memory was not impaired, his thinking processes were good, and he was functioning normally, in full contact with reality.

We do not think that Dr. Kool's testimony can be relied upon to prove appellant's competency at the time of his admissions. Dr. Kool's examination took place more than two months after appellant made the last of his statements, and Dr. Kool admitted that he

could only speculate as to appellant's mental condition at earlier times.

The Commonwealth argues that the burden was on appellant to show that he was incompetent at the time of his earlier admissions, citing *Commonwealth v. Kosh,* supra. We believe that appellant has met this burden by showing that he was institutionalized as incompetent to stand trial at the time the admissions were made, and that the Commonwealth must now come forth with sufficient evidence to the contrary if it wishes to use the statements he made while in Dallas.

The only witnesses to the behavior of one detained for being incompetent to stand trial during the period of his detention are either employees of the Commonwealth or other inmates, most of whom are also incompetent. Under such circumstances, it would be cruel to place the burden on the inmate to prove his incompetence, especially when neither he nor his attorney knows it will be an issue until later, when the Commonwealth brings him to trial. Instead, since the Commonwealth is in control of his detention and the use it wishes to make of any admissions he makes, the burden should be placed on it to show that he was competent at the time his admissions were made. It has not met that burden in this case.

Judgment of sentence reversed, and case remanded for new trial.

Mr. Justice EAGEN concurs in the result.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.