Commonwealth v. Carthon, Appellant.

Argued September 17, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*William Sayer*, Assistant Defender, with him *John W. Packel*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*Maxine J. Stotland,* Assistant District Attorney, with her *David Richman,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 21, 1973:
The six judges who heard this appeal being equally divided, the judgment of sentence is affirmed.

---

OPINION BY CERCONE, J., IN SUPPORT OF REVERSAL:
Appellant Sylvester Carthon was convicted of arson and of firing personal property after a non-jury trial in the Court of Common Pleas, Philadelphia County. Post trial motions were denied and appellant was sentenced to a term of imprisonment of six months to three years on the arson charge and sentence was suspended on the charge of firing personal property. This appeal followed.

The evidence at trial established that Mrs. Linda Williams, the complainant, left her 15th floor apartment at approximately 11:00 p.m. on March 20, 1972, and when she returned about 15 minutes later, her "boyfriend" the appellant, was in her living room.[1] On a table was a gasoline can which appellant explained, when asked by Mrs. Williams, was gas for a friend's car. She then sat down and after they had talked[2] for about 15 minutes, Mrs. Williams dozed off. Shortly thereafter, when she awoke, Mrs. Williams discovered the gas can lying on the floor along with gasoline covering a large

---

[1] Mrs. Williams testified that this room is in fact a living room-kitchen combination.

[2] In response to a question as to what they were talking about Mrs. Williams stated: "Just talking, nothing in particular." She further stated on redirect, that there had been no dispute between her and appellant preceding this incident.

circle-like area which she then directed appellant to clean up.

She then dozed off again and when she awoke she saw appellant standing in front of her. She heard a "big noise", saw the gasoline blaze up behind him. Appellant grabbed Mrs. Williams and pulled her on to the balcony, stating "He was sorry, he didn't mean it." He then shouted for someone to call the fire department.

An assistant fire marshal for the Philadelphia Fire Department arrived approximately one hour after the fire, after the furniture had been moved to the balcony and the area of the fire had been cleaned by the fire department. He observed a flammable liquid burn pattern in the middle of the living room floor. The floor, wall, ceiling and much of the furniture were burned. As a result of his observations he concluded, over objection, that the fire was incendiary in nature. He did state, however, that gasoline could be set off by static charges. Although he could not determine whether such static charges were present in the apartment, he thought this would be unlikely since the floor covering was of tile. He emphasized that this had been a flash fire which must have been ignited immediately after the gasoline was spilled on the floor, because had there been a passage of time before ignition, a violent explosion would have resulted.

Appellant testified that he had purchased the can of gasoline for a friend's car in which he had been riding and which had run out of gas near Mrs. Williams' apartment building. He stated he went to get gasoline, leaving a radio at the service station for a deposit on the can. When he returned to the car he discovered his friend was gone and the car was locked. He then went to Mrs. Williams' apartment where he placed the can of gas on the table. He stated that the can fell off the table and as he reached for the mop which was in a

nearby closet, the gasoline erupted. He then grabbed Mrs. Williams and took her out onto the balcony and called for help.

The offense of arson is defined in 18 P.S. §4905 as: "Whoever, willfully and maliciously, sets fire to or burns, or causes to be burned, or who aids, counsels, or procures the burning of any dwelling house . . . whether the property of himself or of another is guilty of arson." 1939, June 24, P. L. 872, Sec. 905. In order to prove that arson has been committed, the Commonwealth must establish beyond a reasonable doubt that (1) there was a fire, (2) it was incendiary in origin, and (3) that the defendant was the guilty party. *Commonwealth v. Mozzillo*, 443 Pa. 171, 175 (1971).

After a verdict of guilty, the test of the sufficiency of the evidence, direct or circumstantial, is whether accepting as true all of the evidence upon which, if believed, the trier of fact could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Whiting*, 409 Pa. 492 (1963). While it is the function of the jury to pass upon the weight of the evidence, it is the duty of the trial judge to determine its sufficiency and in a proper case, such as is presently before us, to declare it insufficient as a matter of law. *Commonwealth v. Pogach*, 119 Pa. Superior Ct. 510 (1935).

It is well established that in an arson case, the corpus delicti as well as the guilt of the accused can always be proved by circumstantial evidence and expert testimony as to the origin of the fire is properly admissible. *Commonwealth v. Nasuti*, 385 Pa. 436 (1956); *Commonwealth v. Reginelli*, 208 Pa. Superior Ct. 344, 349 (1966). The opinion evidence, however, can have probative value only where there is testimony sufficient to support findings by the jury of the facts assumed by the expert as the predicate of his opinion.

*Rennekamp v. Blair*, 375 Pa. 620, 628 (1954). In *Jones v. Treegoob*, 212 Pa. Superior Ct. 482, 491 (1968), expert testimony on a state of facts not supported by the evidence was held inadmissible. In that case the court stated that since the expert's opinion was merely conjecture based on a theory unsupported by sufficient established facts and since it was but one of several causes that might have been suggested by the record, the testimony was held inadmissible. In the case at bar, there was no showing of any factual basis opinion which the expert would be justified in basing his opinion. It is undisputed that the fire did result soon after the gas spill; however, there were insufficient facts to support the expert's opinion that a gasoline fire which starts soon after gasoline is spilled must lead to the conclusion that the fire was started intentionally. It was further undisputed that no source of ignition was ever discovered either by the fire department or by the expert when he examined the apartment, after the fire had been extinguished and the area cleaned by the fire department. In *Murray v. Siegel*, 413 Pa. 23, 29 (1963), the court held "whenever the condition of a particular place or thing at a certain time is in question, evidence of its condition at a prior or subsequent time is inadmissible, unless there is accompanying proof that it had not changed in the meantime (citations omitted)." In the instant case it is obvious that the conditions in the apartment in question had changed by the time the expert had made his examination, especially since the area had already been cleaned by the fire department prior to his arrival.[3] Therefore, although the

---

[3] This is not to say, of course, that an expert may not properly examine the scene of a fire after it is extinguished and testify as to what he finds and base an opinion on the evidence he discovers. However, in the instant case nothing was in fact found at the scene by the expert that would justify and support his conclusions. The fact that nothing was found to explain the ignition was spe-

expert found no source of accidental ignition upon his examination of the apartment, this cannot be held to conclusively prove that none existed prior to the fire, nor can it be used as a basis to conclude that the source of ignition must have been provided by the appellant.

The function of opinion evidence is to assist the jury in arriving at a correct conclusion upon a given state of facts, but in order to endow the opinion evidence with probative value, it must be based on facts sufficient to enable the expert to form an intelligent opinion. "An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture. The opinion must be an intelligent and reasonable conclusion, based on a given state of facts, and be such as reason and experience have shown to be a probable resulting consequence of the facts proved. The basis of the conclusion cannot be deduced or inferred from the conclusion itself. *In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion.*" *Collins v. Hand,* 431 Pa. 378, 390 (1968). It was therefore improper for the trial court to have accepted into evidence the expert's opinion regarding whether the origin of the fire was accidental or incendiary where such opinion was a mere conclusion unsupported by the facts in evidence.

This case differs materially upon its facts from the decided cases in which convictions have been sustained.

---

cially important in respect to the expert's conclusion that the fire was not started by any accidental source merely because no accidental source was discovered. The condition of the apartment at the time of ignition was so vital in arriving at such a determination that his conclusion coming after the apartment had been so drastically changed by the fire itself and the subsequent clean-up by the fire department was unwarranted.

In those cases, there was proof of facts and circumstances which were clearly and unequivocally inconsistent with the defendant's innocence. For example, in *Commonwealth v. Skwortzo*, 113 Pa. Superior Ct. 345 (1934), defendant owned his home which he occupied with his family which was partially destroyed by fire. After the fire, oil was found in the clothes presses and around the baseboards of the room and there was an odor of kerosene or gasoline in the house. He had sent several members of his family to visit relatives, and on the night of the fire defendant and the remaining member of his family slept on the first floor. One of the other defendants was seen leaving the house immediately after the fire was discovered. In *Commonwealth v. Pulcmena*, 113 Pa. Superior Ct. 430 (1934), defendant's testimony as to his whereabouts prior to the fire was contradictory. In *Commonwealth v. Cucciardo*, 118 Pa. Superior Ct. 149 (1935), elaborate preparations were made, including the attaching of a wire to an alarm clock, stringing of wires in the basement, as well as the placing of large quantities of combustibles. Clearly, the case at bar presents neither the quantum nor the quality of evidence established in these previous cases where convictions were sustained. In the instant case, the prosecution relied entirely upon the undisputed events that preceded the actual ignition of the gasoline, specifically, that the fire started soon after the spill, and upon the unsupported opinion of the expert that ignition of gasoline soon after a spill leads to the conclusion that the ingition was deliberate.

Finally, looking to cases in which the evidence was held insufficient as a matter of law, I believe that a similar conclusion regarding insufficiency of evidence must be reached in the instant case. In *Pogach*, supra, the oil stained cartons, portions of sweater and blanket smelling of gasoline were sufficient, standing alone, to raise at least a suspicion of incendiarism and of appel-

lant's guilt. However, the explanations given by appellant and his brother were natural and rebutted the inferences of guilt which might otherwise have been drawn from the discovery of these articles. The court said that they would at least "treat them as having sufficient force to neutralize the evidence for the Commonwealth and render it equivocal and therefore not inconsistent with innocence." *Pogach* at page 518. Similarily, in the case at bar there exists sufficient facts to neutralize what evidence the Commonwealth did present. The tenant's clear lack of fear or apprehension prior to actual ignition and the appellant's natural instinct not to be trapped by a gasoline fire in a high rise apartment building clearly affect the inference of guilt created by the unexplained ignition.

The following language contained in *Commonwealth v. Evans,* 399 Pa. 387, 396 (1960),[4] is especially appropriate: "While the mere fact that the evidence adduced is wholly circumstantial is not fatal to the Commonwealth's case (Commonwealth v. DePetro, 350 Pa. 567, 577, 39 A. 2d 838), yet it must be remembered that guilt must be proved and not conjectured. The reasonable inference of guilt must be based on facts and conditions proved; it cannot rest solely on suspicion or surmise. These do not take the place of testimony. The facts and circumstances proved must, in order to warrant a conviction, be such as to establish the guilt of the defendant, not . . . as being absolutely incompatible with his innocence, but at least beyond a reasonable doubt. . . . Commonwealth v. Marino, 142 Pa. Superior Ct. 327, 16 A. 2d 314; Commonwealth v. Libonati, 346 Pa. 504, 508, 31 A. 2d 95; Commonwealth v. Holt, 350 Pa. 375, 387." The circumstantial evidence in this case is not such as to reasonably and naturally justify an inference of the guilt of the accused nor is it of such

---

[4] *Concurring and dissenting opinion by then Mr. Justice* BELL.

volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt.

Accordingly, I would reverse the judgment of the court below.

HOFFMAN and SPAETH, JJ., join in this opinion in support of reversal.