Commonwealth, Appellant, *v.* Cunningham.

Argued November 20, 1973.  Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*E. Rendell,* Assistant District Attorney, with him *Joseph C. Murray* and *Steven H. Goldblatt,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Stanley M. Schwarz, P. C., Arthur K. Makadon,* and *Milton M. Stein,* for appellee.

OPINION BY MR. JUSTICE POMEROY, July 16, 1974:

This appeal by the Commonwealth presents the narrow question whether statements of a defendant which were volunteered to private citizens at a time when the defendant's mental state was, allegedly, such as to render him incompetent to testify to the subject matter of those statements may be suppressed pre-trial pursuant to Rule 323 of the Pennsylvania Rules of Criminal Procedure.

Appellee, Cornelius Cunningham, is charged with one count of murder and three counts of assault with intent to kill. The testimony at the suppression hearing indicates that, in the early afternoon hours of March 22, 1971, appellee shot and killed one Daryl Coleman in the basement of Temple University Hospital, Philadelphia. On his way out of that institution, Cunningham turned to a group of individuals seated in a hallway and stated, "Your friend's dead. I just killed your friend." Approximately two hours later, Cunningham surrendered himself to a guard in the Raymond Rosen Housing Project. At this time, he handed the guard a gun and stated that he had shot several people. After the shooting at Temple, but prior to his surrender to the project guard, Cunningham allegedly shot and wounded three other people. At approximately 3:00 p.m. on March 22, 1971, appellee was taken into custody by members of the Philadelphia Police Depart-

ment. During his in-custody period, he gave several incriminating admissions to the police.

Cunningham filed a pre-trial motion to suppress evidence of his in-custody and out-of-custody statements and the gun. Following an evidentiary hearing pursuant to Rule 323, the court entered an order suppressing the in-custody statements on the ground that the defendant was incompetent to make a valid waiver of his *Miranda*[1] rights; it held under advisement the motion to suppress the physical evidence and the volunteered out-of-custody statements. Upon further consideration, the court ruled the physical evidence admissible but suppressed the statements on the ground that they were made at a time when the defendant's state of mind was such as to render him incompetent to make such admissions. The Commonwealth does not dispute the rulings as to the statements made while in police custody, but contends that the pre-trial suppression of the out-of-custody declaration was improper.[2] We agree.[3]

---

[1] *Miranda v. Arizona*, 86 S. Ct. 1602, 384 U.S. 436, 16 L.Ed.2d 694 (1966).

[2] The appellee contends that the appeal herein was untimely filed. While a motion to quash the appeal was filed, it was not on the ground of untimeliness, but on the ground that the appeal was from an interlocutory order. We can, however, notice the defect of untimeliness nevertheless, since it goes to the appellate jurisdiction of the Court. Having reviewed the record, we have concluded that the appeal should not be quashed. Due to an error in the office of the District Attorney, the order of the suppression judge, made by her on September 7, 1972, and delivered to the file room of the District Attorney's office on October 4, 1972, was not brought to the attention of any lawyer in that office until five weeks after it was made. The Commonwealth then promptly, but mistakenly, applied to the lower court for leave to appeal, nunc pro tunc, to this Court. The motion was at first granted, but later, and correctly, refused since the lower court has no cognizance over allowance of appeals to this Court. This latter order was filed on March 15, 1973 and was accompanied by an opinion both on the question of

Rule 323(a) provides: "The defendant or his attorney may make application to the court to suppress any *evidence* alleged to have been *obtained in violation of the defendant's constitutional rights."* (Emphasis added.) The comment to Rule 323 explains the purpose and scope of the rule: "The rule is designed to provide one single procedure for the suppression of evi-

right to appeal and also in support of the suppression order of September 7th. The appeal was taken within thirty days of entry of the order of March 15, 1973.

We need not pass judgment on the combination of mistakes which caused the seven-month delay in taking this appeal, for it appears that the record is still imperfect, and, paradoxically, that the appeal is, in fact, technically premature. Paragraph A of Rule 19 of this Court provides that "No judgment, sentence, order or decree shall be appealable until it has been entered upon the appropriate docket in the court below". It is this act of docketing which constitutes the "entry" of an order under the Appellate Court Jurisdiction Act of 1970, 17 P.S. §211.502(a) (". . . an appeal under this act from any order shall be filed within thirty days of its entry"). See *Slotsky v. Gellar,* 455 Pa. 148, 151, 314 A.2d 495 (1974). For reasons that are not explained on this record, the original order of suppression has not *yet* been docketed, although the opinion of the court in support of it has been. Rather than remand to allow the order to be physically entered on the docket and thus cause further delay, we will consider that done which should have been done, and direct the prothonotary of the court of common pleas, when this record is remanded, to docket the order of September 7, 1972 as of March 15, 1973, that being the date when the court of common pleas filed its opinion relative to that order, and also its order refusing an appeal nunc pro tunc. We believe that the selection of this date is fair and just to all concerned under all the circumstances of this case, but, by this disposition, we do not mean to establish any precedent for the future. The docketing of the order of September 7th could and should have been done promptly, and could have been attended to by either party or the court.

[3] We are not here concerned with the question of appellee's mental competence, but only with the propriety of ruling on that question pursuant to Rule 323 as it bears on the admissibility of the out-of-court statement.

dence alleged to have been *obtained* in violation of the defendant's constitutional rights. It does not contemplate suppression of evidence simply because its *introduction* may be prejudicial or may even constitute harmful or plain error. The rule was revised to cover violations of Mapp v. Ohio, 81 S. Ct. 1684, 367 U.S. 643, 6 L.Ed.2d 1081 (1961); Escobedo v. Illinois, 84 S. Ct. 1758, 378 U.S. 478, 12 L.Ed.2d 977 (1964); Jackson v. Denno, 84 S. Ct. 1774, 378 U.S. 368, 12 L.Ed.2d 908, 1 A.L.R. 3d 1205 (1964); Miranda v. Arizona, 86 S. Ct. 1602, 384 U.S. 436, 16 L.Ed.2d 694, 10 A.L.R. 3d 974 (1966); United States v. Wade, 388 U.S. 218 (1967); and Gilbert v. California, 87 S. Ct. 1951, 388 U.S. 263, 18 L.Ed.2d 1178 (1967) and others that may be decided by the Courts in the future, so long as they are *obtained* in violation of constitutional rights." (Emphasis in original.)

Appellee does not assert that his unsolicited statements to private citizens were "obtained" in violation of any constitutional rights as set forth in the enumerated cases or in any subsequent case. Rather, he maintains that *introduction* of his statements at trial would be a violation of due process. It may be as well argued that any error in rulings on evidence would be so violative. It is precisely to this distinction between unconstitutionally obtained evidence and erroneously admitted evidence that the comment to Rule 323 is directed.

As Mr. Justice O'BRIEN stated, in announcing the decision of the Court in *Commonwealth v. Mozzillo*, 443 Pa. 171, 175-76, 278 A.2d 874 (1971),[4] where a defendant, while incarcerated because incompetent to stand trial, had boasted to his jailer of the crime he had committed: "Thus, we are not faced with a con-

---

[4] Mr. Justice EAGEN concurred in the result; Mr. Chief Justice BELL dissented; Mr. Justice COHEN and Mr. Justice ROBERTS did not participate in the decision.

fession and the attendant question of whether the appellant was competent to waive his constitutional rights against self-incrimination without the advice of counsel. Instead, appellant's competency to make these admissions is governed by rules of testimonial capacity which in turn are principally concerned with trustworthiness." 443 Pa. at 175, 176. Noting that no question of insanity was involved, nor any question of the understanding of an oath, Justice O'BRIEN went on to say that: "the only questions which must be considered in analyzing appellant's mental health at the time of his admissions [are] whether his memory, his thinking processes or his orientation to reality made it likely that his admissions were untrue." 443 Pa. at 176. Such an issue has long been held to be one for the determination of the trial court. *Commonwealth v. Kosh,* 305 Pa. 146, 155, 157 A. 479 (1931); *Commonwealth v. Loomis,* 270 Pa. 254, 113 A. 428 (1921). Except with respect to evidence allegedly obtained in violation of a defendant's constitutional rights, Rule 323 was not designed to change the normal conduct of a trial or to supersede the function of the trial judge in ruling on evidentiary questions in the total context of the case before him. The admissibility of the evidence here involved, like evidence in general, is to be determined when it is offered and objected to at trial.

Having concluded that the court below erred in acting pursuant to Rule 323 to suppress pre-trial evidence not *obtained* in violation of defendant's constitutional rights, we will vacate the order of September 7, 1972 insofar as it relates to the out-of-custody declarations. It is so ordered.

Mr. Justice MANDERINO concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent and would quash the Commonwealth's appeal. The Opinion announcing the judgment of the

Court concedes, as it must, that the seven-month delay in filing an appeal from the trial court's September 7, 1972 order was due solely to the Commonwealth's negligence. Not quashing this appeal, therefore, distorts accepted appellate practices and sub silentio ignores all our prior cases holding that the untimely filing of an appeal divests this Court of jurisdiction.

Assuming the assertion is correct that the instant appeal is also prematurely taken, there is still no excuse for not quashing it. An appeal to fairness and justice is offered to rationalize the result reached by the Opinion announcing the judgment. However, nothing exists to explain in what fashion the entertaining of this premature appeal is either fair or just.

Obviously troubled, the three justices joining the Opinion announcing the judgment seek to avoid the impact of their view by stressing that it is not meant as precedent. It would be naive indeed to think that incantation, however long or hard, of the supposedly magic words "this is not precedent" will deter litigants intent on having their appeals improperly considered from relying on the instant case. If this Court's adjudications are to be something other than "a restricted railroad ticket, good for this day and train only,"* then surely all similarly-situated litigants are entitled to the same treatment today accorded the instant appellant.

Mr. Chief Justice JONES and Mr. Justice NIX join in this dissenting opinion.

---

* *Smith v. Allwright,* 321 U.S. 649, 669, 64 S. Ct. 757, 768 (1944) (OWEN J. ROBERTS, J., dissenting).