## Commonwealth *v.* Groce, Appellant.

Argued November 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

16

*John J. Duffy*, for appellant.

*Philip J. O'Malley*, Assistant District Attorney, with him *Ralph B. D'Iorio*, Assistant District Attorney, and *Stephen J. McEwen, Jr.*, District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Eagen, May 4, 1973:

Wesley Groce was convicted by a jury of murder in the first degree, and the punishment was fixed at life imprisonment. Post-trial motions were denied, and sentence was imposed as the jury directed. These appeals followed.[1]

The prosecution stemmed from the attempted robbery of John Courtney and Joseph O'Brien, Esq., in Media, Delaware County, on April 7, 1969, by three young males. During the occurrence Courtney was fatally shot by one of the felons. O'Brien was stabbed and shot, but eventually recovered from the wounds.

---

[1] In the same trial, Groce was also convicted of robbery, violation of the Uniform Firearms Act, carrying a concealed deadly weapon, assault with intent to kill and conspiracy. Timely appeals from the sentences imposed on these convictions were filed in the Superior Court. Since all of these criminal charges grew out of the same occurrence, the appeals were certified to this Court. All appeals will be disposed of in this one opinion.

Several assignments of error are asserted, but only one necessitates discussion.

During the trial testimony of a Commonwealth witness, the Chief of Police of Media, the following occurred: "Q. [District Attorney] : When the defendant was arrested, did you have occasion to bring him to the Media Police Station? A. Sir, he came in on his own. Q. As a result of what? A. Through our investigation and a door-to-door check, we came up with the name Nino. Then at this point . . . [Mr. Duffy] : I object to that, sir, and move to strike. The Court: Overruled. [By Mr. Reilly] : Q. Go ahead. A. During our door-to-door and house-to-house check, we came up with the name Nino. Then I started to get my mind working, because in the years I have been a police officer I heard the name Nino before. I went through a great deal of my files, and all of a sudden I thought of the name Groce, and this is where we came to the conclusion that Nino was Groce."

The appellant contends this testimony was prejudicial and rose to the level of reversible error, because the jury could reasonably believe he had a past criminal record. With this contention we agree.

The law is clear that as a general rule the Commonwealth cannot introduce evidence of distinct crimes against a defendant in a prosecution for a separate offense. The rule and its underlying theory were stated in *Commonwealth v. Burdell*, 380 Pa. 43, 110 A. 2d 193 (1955), wherein this Court stated: "One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create preju-

dice and an emotional reaction on their part against the defendant." *Id.* at 47, 110 A. 2d at 195. The special circumstances which the *Burdell* Court spoke of are exceptions which have been developed to the general rule. For example, evidence of a different crime may be introduced to prove a common scheme or design between two or more crimes. See *Commonwealth v. Foose,* 441 Pa. 173, 272 A. 2d 452 (1971); *Commonwealth v. Wable,* 382 Pa. 80, 114 A. 2d 334 (1955).[2] It is also allowable in some circumstances to impeach credibility by proof of a prior criminal record. See *Commonwealth v. McIntyre,* 417 Pa. 415, 208 A. 2d 257 (1965); *Commonwealth v. Butler,* 405 Pa. 36, 173 A. 2d 468 (1961).[3]

The Commonwealth does not try to bring the challenged testimony within one of the established exceptions to the rule, but maintains the testimony did not

---

[2] In *Wable* the Court explained the purpose of the rule: "But it is also true that sometimes there exist the 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crimes on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." 382 Pa. 84, 114 A. 2d at 336-37.

[3] The explanation of this exception was given in *Butler*:

"It has been the law in Pennsylvania for decades that whenever a *witness or a defendant* takes the witness stand, his testimony may be impeached by showing prior convictions of felonies or misdemeanors in the nature of crimen falsi. . . .

"This rule of evidence is founded on common sense and logic. If a defendant offers himself as a person worthy of belief, the jury has the right to know what kind of man he is—to aid in assessing his credibility. His previous record is admissible for this purpose just the same as testimony of prior reputation for veracity is evidence for the jury's consideration." 405 Pa. at 46-47, 173 A. 2d at 473-74.

offend the general rule because the jury could not infer past criminal activity therefrom.

In the recent case of *Commonwealth v. Allen*, 448 Pa. 177, 292 A. 2d 373 (1972), while dealing with the prejudicial introduction of photographs in the possession of the police, the Court in general discussion set forth the following rule which is equally applicable in the instant case:

*"We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. . . .*

"It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. It has been succinctly stated that '[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty and thus effectually to strip him of the presumption of innocence.' Commonwealth v. Trowery, 211 Pa. Superior Ct. 171, 173-74, 235 A. 2d 171, 172 (1967). Recognizing the prejudicial effect of such evidence, there is no justification for indirectly allowing the introduction of prior criminal activity by reference to photographs of the accused. *Once it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed."* Id. at 181-82, 292 A. 2d at 375. [Emphasis supplied.]

Thus, the operative question is whether the jury "could reasonably infer from the facts presented that

the accused had engaged in prior criminal activity." The answer to this question is clear upon consideration of the testimony of the officer when he said: "[I]n the years I have been a police officer I have heard the name Nino [Groce] before. I went through a great deal of my files, and all of a sudden I thought of the name Groce, . . ." Why would a police officer from the performance of his duties recognize a name? Why would a man's name be in police files? The obvious answer is the party had engaged in prior criminal activity, and we rule the jury could reasonably infer this from the testimony. Hence, prejudicial error was committed.

The Commonwealth also contends the error was not properly preserved for appellate review, because "appellate did not object to the answer of the Chief after the initial motion was overruled." It probably would have been more astute on the part of counsel to have renewed the objection in the form of a motion to strike for specific reasons at the conclusion of the challenged testimony. However, the repetition of an objection is needless where the same or similar evidence, already duly objected to, is again offered and the trial court's ruling has indicated that an objection to such evidence will again be overruled. See 1 Wigmore, Evidence §18 (3d ed. 1940). Additionally, after reading the record in its entirety, it is our conclusion the erroneously admitted evidence probably had a substantial influence in bringing about the jury's verdict.

Judgment reversed and new trial ordered.

Mr. Justice MANDERINO concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The brief excerpt, quoted by the majority, from the voluminous record of appellant's trial,* reveals inept

---

*The trial consumed five trial days. Over twenty witnesses were heard, and their testimony comprises 870 pages of transcript.

and unnecessary questioning by the prosecution and a volunteered, irrelevant answer by the police officer witness. That answer, however, does not strike me as conveying to the jury a prior police record of the defendant. It is true that there was a reference to searching police files. But the name "Groce" was linked to the name "Nino" not by reason of any file disclosure, but because the testifying officer "all of a sudden . . . thought of the name 'Groce'." The files, apparently, were barren.

In any event, I think it clear from the record that there was no objection to the quoted excerpt. The objection that was made (and which the majority finds sufficient for the reason that it was to "the same or similar evidence") appears in the record thus: "Q. [District Attorney] : When the defendant was arrested, did you have occasion to bring him to the Media Police Station? A. Sir, he came in on his own. Q. As a result of what? A. Through our investigation and a door-to-door check, we came up with the name Nino. Then at this point . . . Mr. Duffy [Attorney for the Defendant] : I object to that, sir, and move to strike." It is apparent to me that the ground of defense counsel's objection, although general in form, was that what the witness learned through a door-to-door investigation was hearsay. It is quite certain that the objection *could not have been* to the introduction of "other crimes" testimony for the simple reason that there was no such testimony yet uttered and none apparently in the offing. When the witness later testified as to how he had connected in his memory the name "Nino" with the name "Groce", defense counsel evidently detected no prejudice and remained silent.

While I subscribe wholeheartedly to the principle that a man should not be convicted of one crime by proof of his commission of unrelated past crimes, I fail to see how that principle was violated in this case. Even

conceding that it is *possible* that one hearing this testimony might conclude that at some point in the past appellant had come out on the wrong side of the law, I think it unrealistic to say that a jury would seize on testimony that a police officer knew Groce by his nickname as a consideration in reaching a verdict of first degree murder. This is to attribute a prejudicial effect not to evidence of other crimes, but to a possible inference that there was a prior police record of some sort. This seems much too remote and speculative to be the foundation of a new trial in this case. See *United States v. Hines*, 470 F. 2d 225 (3d Cir. 1972).

Accordingly, I dissent.

Mr. Chief Justice JONES joins in this dissenting opinion.