Commonwealth *v.* Turner, Appellant.

440

Argued September 24, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stephen P. Swem*, Assistant Public Defender, with him *John J. Dean*, Assistant Public Defender, and *George H. Ross*, Public Defender, for appellant.

*Robert L. Campbell*, Assistant District Attorney, with him *Robert L. Eberhardt*, Assistant District Attorney, and *Robert W. Duggan*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, November 26, 1973:

The appellant, John Langford Turner, was convicted by a jury of armed robbery and receiving stolen goods. A motion for a new trial was denied, and Turner was sentenced to a term of three to ten years imprisonment on the robbery conviction. On appeal, the Superior Court, being equally divided, affirmed the judgment of sentence. We granted allocatur and now reverse.

The sole issue before this Court is whether the testimony of a police officer, wherein he described a photographic identification of Turner, constituted reversible error. Specifically, Turner asserts this testimony, in effect, informed the jury he had a prior criminal record.

The record discloses the following facts. Detective Burke, one of the investigating officers, testified as to how the police identified Turner as the man who committed the armed robbery. Over objection, he stated on direct examination: "Q. And what was your purpose in speaking to Miss Brown [the victim]? A. Well, I went to Miss Brown and I showed her photographs on that date."

. . .

"Q. Now, Detective Burke, before you showed any pictures to Miss Brown, did you obtain from her a description of her assailant? A. Yes, we did. Q. Do you recall or do you have noted somewhere in your report the description that was afforded to you by Miss Brown around 9:45 p.m. the night of the robbery? A. Yes. Miss Brown gave a description to Detective Foley and he had the description written down on a piece of paper while he was interviewing the victim, Miss Brown, and she gave a description of a colored male, twenty-five, five foot eight or nine, one hundred sixty-five pounds, medium brown skin, Afro haircut, pock-marked face, khaki Barricuda type jacket and dark pants. Q. Based on that description, which was given to you, did you

later conduct a photo identification procedure? A. Yes, I did. Q. And in this photo identification procedure, how many photographs were involved? A. There was nineteen photographs shown. Q. Now, how did you select the photographs which were grouped into the nineteen shown to Miss Brown? A. I took eighteen photographs in the Robbery Section, we have files of medium, tall and short robbery suspects and robbery defendants, and when I got the description of this person, I went to the file marked 'Mediums' and selected eighteen photographs from the file cabinet."[1]

In Pennsylvania, the law is clear that if a testimonial reference to a photograph indicates to the jury the accused has been involved in prior criminal activity, reversible error is committed. This rule is based on the principle that evidence of distinct crimes may not be introduced against a defendant who is being tried for another crime, except under certain limited circumstances, not relevant here. See *Commonwealth v. Groce,* 452 Pa. 15, 303 A. 2d 917 (1973) ; *Commonwealth v. Allen,* 448 Pa. 177, 292 A. 2d 373 (1972).

In *Allen,* this Court stated : "We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity. Thus, testimony suggesting that the photograph was secured from a school yearbook or from the possession of acquain-

---

[1] A motion for a mistrial was refused.

tances of the defendant illustrates situations where the suspect is not prejudiced by the photographic reference." Id. at 181, 292 A. 2d at 375. Hence, the operative question is, could the jury have inferred from the testimony of Officer Burke that Turner had been involved in prior criminal activity.

The Commonwealth argues no such inference arose because the officer was asked how he selected the *nineteen* photographs and he replied he took *eighteen* photographs from the robbery files. The Commonwealth asserts, therefore, a fair reading of the record gives rise to the implication the nineteenth photograph, that of Turner, came from a source other than police files.

We view this assertion with skepticism, although it has superficial appeal. The difficulty with acceptance of this view is it is equally possible the jury inferred Turner's photograph came from the robbery files, or the jury did not perceive the difference in the numbers the officer used. Such an argument would be tenable if the officer had indicated the source of Turner's photograph, or explained Turner's photograph came from somewhere other than police files of "robbery suspects and robbery defendants." But, such an explanation did not come from Officer Burke or any of the other Commonwealth witnesses. Consequently, we are left with a factual situation squarely on point with the facts presented to this Court in *Groce* and *Allen*.

One other point requires brief discussion. Although, it is not presently argued by the Commonwealth, the lower court ruled the reference by the officer was harmless error because Turner subsequently took the witness stand, and the prior convictions were admissible to impeach his credibility. In *Allen*, a similar argument was raised and this Court dismissed it recognizing the accused may have been forced to testify in order to rebut the unfair inference arising from the Commonwealth's illegally admitted evidence.

444

The order of the Superior Court and the judgment of the trial court are reversed, and a new trial is granted.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.