346 A.2d 550

COMMONWEALTH of Pennsylvania

v.

Francis McFADDEN, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Jan. 17, 1975.

Decided Oct. 3, 1975.

Rehearing Denied Nov. 12, 1975.

Joel Harvey Slomsky, Edward Reif, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, James Garrett, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

The appellant, Francis McFadden, was convicted by a jury of murder in the second degree and assault and battery with intent to murder. His post-trial motions were denied and consecutive sentences of six to twenty years imprisonment for murder and three and one-half to seven years imprisonment for assault were imposed. This appeal followed.[1]

---

1. The appeal of the judgment of sentence on the murder conviction was taken directly to this Court in conformity with § 202(1) of the Appellate Court Jurisdiction Act. Act of July 31, 1970, P. L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975–76). Pursuant to § 503(c) of the ACJA, the Superior Court transferred to this Court the appeal of the judgment of sentence on the assault conviction.

Although at trial appellant's defense was that of mistaken identity, it is now conceded in his brief that the Commonwealth's evidence was sufficient to convict him. In brief, that evidence was that the appellant, without any apparent provocation, stabbed two men who had been drinking together in the Phone Booth Bar in the City of Philadelphia. One of the men died, but the other survived and at trial positively identified appellant as his assailant and as the killer of his friend.

Appellant McFadden has raised two issues, neither of which, in our opinion, merits a new trial. We will, accordingly, affirm.

■ The first issue presented is whether a particular answer given by an investigating detective to a question asked was so prejudicial that it deprived appellant of a fair trial. The testimony complained of occurred at the end of the following colloquy: "Q. [by the assistant district attorney] And when had your attempts to arrest Mr. McFadden commenced? A. [by Detective White] Started with the night of the incident when our interview led us to believe that he was a suspect in a homicide, we attempted to locate him at several addresses we had for him. Q. How many different addresses did you check in attempting to find him? A. I believe about three, sir. Q. And what basis were you using to locate Mr. McFadden, A. *Addresses from our records.*" (emphasis added). Defense counsel objected at this point and the last answer was stricken from the record. The court, however, refused to grant a mistrial. Appellant earnestly argues that the reference to "records" could only have been interpreted by the jury to mean that he had a previous criminal record; and that such testimony was prejudicial because it could be taken by the jury to be substantive evidence of appellant's guilt of the crimes for which he was then being tried. We are not persuaded of the validity of this argument when the stricken answer is viewed in its proper factual and legal context.

268

In *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972), this Court set down the basic guidelines for dealing with situations like the present one. *Allen* involved a case where several Commonwealth witnesses made references to the fact that eyewitnesses had been shown photographs of the defendant by the police. The argument was made, as here, that the reference to such photographs permitted the jury to infer that the defendant had a prior criminal record. Although in that case we held the references to have been improper and prejudicial, thus warranting a new trial, we noted the following caveats:

"The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity." *Id.* at 181, 292 A.2d at 375.

In *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973), *cert. denied*, 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed. 2d 219 (1973), this Court applied the *Allen* guidelines to reverse a conviction where there had been testimony at trial by an investigating police officer concerning a search for the defendant's name in his "files." A majority of this Court [2] concluded that this statement consti-

2. In *Groce* the present writer filed a dissenting opinion, which was joined by Mr. Chief Justice Jones. 452 Pa. at 20, 303 A.2d at 920.

tuted "prejudicial error" because the jury could "reasonably infer" from it that the defendant had committed other crimes previously. *Id.*, 452 Pa. at 20, 303 A.2d at 920. Since the terms "files" and "records" are almost synonymous, it would appear that *Groce* is directly in point. There is, however, a factor present in this case which was not present in *Groce*. In *Allen,* as quoted above, we stated that reversal would not be warranted "where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity." Such other "explanation" is present in the record in the instant case as to the meaning of the term "records". During cross-examination of Detective White, defense counsel pursued a line of questioning concerning when the police search for McFadden began. In response to one such question, the detective answered as follows: "What I am saying is, we were looking for Mr. McFadden from the time we discovered he was a suspect. *During the course of our investigation we received fresh inputs as to new locations and new addresses.* We checked each of these out as the investigation progressed. That is what I am saying, sir." (emphasis added). This explanation concerning addresses was repeated on redirect examination of Detective White, as follows: "Q. Mr. White, do I understand in the course of your investigation according to your responses to Mr. Reif's questions, you received fresh input regarding various locations where Mr. McFadden might be found? A. Yes, sir. Q. And as a result of this fresh input you checked these addresses; is that correct, sir? A. That's correct. Yes, sir." In its opinion explaining its denial of appellant's post-trial motions, the court below stated that "any notion that the information was gleaned from files of defendant's prior criminal conduct was completely dispelled by the detective's explanation that they were the result of 'fresh inputs' developed during the course of this investigation."

From our reading of the record we are satisfied that this conclusion was fully warranted. See also *Commonwealth v. Craft*, 455 Pa. 616, 317 A.2d 213 (1974); cf. *Commonwealth v. Turner*, 454 Pa. 439, 311 A.2d 899 (1973).

■ The other argument advanced by appellant is also without merit. He contends that he was denied a fair trial because he was "coerced" into not taking the stand in his own defense because of a fear that he would be subject to impeachment through the introduction into evidence of his prior convictions. This apprehension may or may not have been justified. The record is of course silent on the matter since the defendant did not take the stand. His argument of duress is thus entirely speculative. Looking to the merits of the argument, however, it was but recently rejected by this Court in the case of *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). In doing so, we relied upon the decision of the Supreme Court of the United States in *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), wherein that Court observed "It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like. [citations omitted] Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." 402 U.S. at 215, 91 S.Ct. at 1471, 28 L.Ed.2d at 731, quoted at 452 Pa. at 565, 307 A.2d at 261–262.

Judgments of sentence affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.

NIX, J., files a concurring opinion.

ROBERTS, J., concurs in the result.

MANDERINO, J., dissents.

NIX, Justice (concurring).

I agree with the result reached by the majority today but I believe it necessary to explain why I have concluded that *Allen*[1] does not require a reversal of the judgment of sentence and an award of a new trial.

In *Allen* the offensive reference to police photographs was admitted into evidence in such a context that a juror could reasonably infer that the accused had engaged in prior criminal activity. Their testimony pertaining to police photographs was more than a mere passing reference and the record was barren of any explanation of police possession other than as a result of criminal activity on the part of that accused prior to the incident for which he was then standing trial.

Here, when the attorney for the Commonwealth attempted to explain the initial passing reference, the alert counsel for the defense properly objected and the objection was sustained by the trial judge.[2] *Thus,* like *Allen,* the evidence to which the objection was made was stricken and the only issue presented was whether the trial judge was also required to grant a new trial. A court may properly exercise its discretion in refusing to abort a trial where the error can be corrected and the prejudice cause thereby removed. The learned court by its ruling prevented further inquiry into this area and thus

---

1. *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972).

2. [A.D.A.] Q. And when had your attempts to meet Mr. McFadden commenced?
A. Started with the night of the incident when our interview led us to believe that he was a suspect in a homicide, we attempted to locate him at several addresses we had for him.

. . . .

Q. And what basis were you using to locate Mr. McFadden?
A. Addresses from our records (objection sustained and answer stricken)

. . . .

[Defense C.] Q. Mr. White, do I understand in the course of your investigation, according to your responses to Mr. Reif's questions, you received fresh input regarding various locations where Mr. McFadden might be found?
A. Yes sir.

272

blocked the possible introduction of additional prejudicial testimony. More importantly, the record provided an explanation for the police possession of information as to the residence of this appellant which did not suggest the inference of prior criminal activity on his part. Since the prejudice had been removed and further exacerbation of the error was prevented, I agree that the trial court did not abuse its discretion in rejecting the motion for a new trial. Any juror whose curiosity might have been aroused as a result of possession by the police of information relating to appellant's possible residences was immediately satisfied that the information was gained as a result of the investigation relating to the charge for which he was then being tried.