381 A.2d 882

**COMMONWEALTH of Pennsylvania**

v.

**Richard ADAMS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 10, 1977.

Decided Dec. 24, 1977.

611 (1975); *Commonwealth v. Hines*, 461 Pa. 271, 336 A.2d 280 (1975).

Joel H. Ziev, Anthony S. Blasco, Easton, for appellant.

Charles H. Spaziani, Dist. Atty., Alan B. McFall, Asst. Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

On February 13, 1975, appellant, Richard Adams, was convicted by a judge sitting with a jury of murder of the third degree in connection with the stabbing death of Cheryl McNeil. Post-verdict motions were denied on July 31, 1975. Subsequently, appellant was sentenced to a term of imprisonment of ten to twenty years in a state correctional institution. This appeal followed.

■ Appellant first argues that the court below erred in denying him an opportunity to challenge the array of the jury. We do not agree. Appellant's challenge to the array is premised on an alleged systematic exclusion of blacks from the jury.

The facts surrounding this issue are as follows. On Monday, February 10, 1975, prior to voir dire, defense counsel challenged the array of the jury:

"DEFENSE COUNSEL: Before we get to that point, your Honor, we would move also the Court to challenge and object to the entire array for the reason that there seems to be, from our observations, just a matter of exclusion of blacks from the panel. This case involves all black parties."

The court, in denying the challenge, stated:

THE COURT: All right. I am guided by the decisions of the Supreme Court and the law and this panel was picked in accordance with all of the requirements of the law and all of the requirements of the Supreme Court, especially with that Montgomery County case recently that went up that considered this whole question. I can give the citation later. *So that the application at this time within moments of the beginning of the voir dire is denied.*" (Emphasis added.)

Pennsylvania Rule of Criminal Procedure 1104(b) and (c) state:

"(b) *Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than five days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge.*

"(c) *A challenge to the array may be made only on the ground that the jurors were not selected, drawn or summoned substantially in accordance with law.*" (Emphasis added.)

Pa.R.Crim.P. 1104(b) establishes the procedure when a challenge to the array of the jury should be made. Rule 1104(b) requires that challenges to the array of the jury be made "not later than five days before the first day of the week the case is listed for trial . . ." and not thereaft-

er, absent a prior opportunity. Moreover, all challenges shall be in writing and specify the reasons for the challenge.

In the instant case the oral challenge to the array was made minutes before the voir dire was to begin.

The Trial Court did not err in refusing appellant an opportunity to challenge the array. Pa.R.Crim.P. 1104(b). Appellant alleges that this case is governed by *Commonwealth v. (Ronald) Jones*, 452 Pa. 299, 304 A.2d 684 (1973). We do not agree. In *Jones* this court stated:

> "The Commonwealth vigorously asserts in its brief that we should not remand this case for a hearing because the appellant did not meet the procedural standards as set forth in Rule 1104 of the Pennsylvania Rules of Criminal Procedure. A review of the record clearly reveals that appellant's counsel did not comply with this Rule and under normal circumstances, appellant would thereby be precluded from requesting a hearing or complaining about the denial of a hearing. See *Commonwealth v. Butler*, 448 Pa. 128, 291 A.2d 89 (1972); *Commonwealth v. Werner*, 444 Pa. 458, 282 A.2d 258 (1971). *However, the record also reveals the trial court did not deny the hearing on procedural grounds, but rather on substantive grounds, i. e., its belief, through experience, that the jury selection system in Delaware County was constitutionally valid.* Under the circumstances, appellant is not procedurally barred from challenging the denial, since the denial rested .on a substantive foundation." (Footnotes omitted.) (Emphasis added.)

In *Jones, supra*, this court held that untimely challenges to the array of the jury that are denied on substantive grounds, i. e., conformity with the constitution and prevailing case law, rather than procedural grounds should *not* be dismissed without a hearing. The instant case is clearly distinguished from *Jones, supra*. The record in the instant case reveals that while the trial court mentioned "substantive grounds", the trial court also proffered the independent and sufficient

reason of the untimely nature of the challenge.[1] We are of the opinion that the court below properly denied appellant's untimely challenge to the array of the jury.

 Appellant next argues that a portion of the testimony of Police Officer Donald English of the City of Easton Police Department was inadmissible because it referred to police records and, therefore the jury could reasonably infer prior criminal activity and that such an inference was used as substantive evidence of the instant crimes. We do not agree.

The complained of portion of Officer English's testimony was:

[District Attorney]

"Q. What next occurred?

[Officer English]

"A. I received a phone call. In the meantime, I had contacted the sergeant on duty and notified him of the happenings.

"Q. All right.

"A. And that I had the warrants and who they were for and was generally trying to locate, through our records, where I might have an address for the defendant that he might be apprehended or looked for.

"MR. ZIEV: That's objected to, your Honor.

"THE COURT: Overruled."

In *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972), we attempted to clarify the area of law concerning references that may indicate prior unrelated criminal activity on the part of the defendant by saying:

"It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his

---

1. "TRIAL COURT: . . . So that the application at this time within moments of the beginning of the voir dire is denied."

guilt of the present charge.[2] It has been succinctly stated that '[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.' *Commonwealth v. Trowery*, 211 Pa.Super. 171, 173–74, 235 A.2d 171, 172 (1967). Recognizing the prejudicial effect of such evidence, there is no justification for indirectly allowing the introduction of prior criminal activity by reference to photographs of the accused. Once it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed.

"[2] There are certain limited exceptions to this general rule, none of which are applicable here. For example, evidence of a different crime can be introduced to prove a common scheme or design. See, e. g., *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). It is likewise permissible in some instances to impeach credibility by proof of a prior criminal record. See, e. g., *Commonwealth v. McIntyre*, 417 Pa. 415, 208 A.2d 257 (1965). After a verdict of guilty of murder in the first degree, evidence of the commission of other crimes is admissible as an aid to the jury in fixing the penalty."

In *Allen, supra*, after stating the general prohibition against reference to the defendant's prior criminal action, we stated two exceptions to the prohibition:

" . . . The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. *A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the*

*police possession of the photograph unrelated to any inference of prior criminal activity.* Thus, testimony suggesting that the photograph was secured from a school yearbook or from the possession of acquaintances of the defendant illustrates situations where the suspect is not prejudiced by the photographic reference." (Emphasis added.)

The court, in *Allen, supra,* held that references to prior criminal activity of a defendant do not automatically compel reversal of a conviction; rather, the court required that the reference create a reasonable inference of prior criminal activity and further that there be no independent explanation of police possession of the information.

This court has had two occasions to discuss references to "records" and "files" and whether such references constituted reversible error.

In *Commonwealth v. Groce,* 452 Pa. 15, 17, 303 A.2d 917, 918 (1973) the chief of police of Media testified as follows: ". . . 'Q. [District Attorney]: When the defendant was arrested, did you have occasion to bring him to the Media Police Station? A. Sir, he came in on his own. Q. As a result of what? A. Through our investigation and a door-to-door check, we came up with the name Nino. Then at this point . . . [Mr. Duffy]: I object to that, sir, and move to strike. The Court: Overruled. [By Mr. Reilly]: Q. Go ahead. A. During our door-to-door and house-to-house check, we came up with the name Nino. Then I started to get my mind working, because *in the years I have been a police officer I heard the name Nino before. I went through a great deal of my files, and all of a sudden I thought of the name Groce, and this is where we came to the conclusion that Nino was Groce.*' " (Emphasis added.)

The court, in *Groce, supra,* reversed the conviction and remanded for a new trial. The reference to "files" in *Groce* is more detailed than that in the instant case and the court determined the inference of prior criminal activity was reasonable.

In *Commonwealth v. McFadden*, 464 Pa. 265, 346 A.2d 550 (1975), an investigating police officer testified as follows: ". . . 'Q. [by the assistant district attorney] ·And when had your attempts to arrest Mr. McFadden commenced? A. [by Detective White] Started with the night of the incident when our interview led us to believe that he was a suspect in a homicide, we attempted to locate him at several addresses we had for him. Q. How many different addresses did you check in attempting to find him? A. I believe about three, sir. Q. And what basis were you using to locate Mr. McFadden. A. *Addresses from our records.*" (emphasis in original)

The police officer explained his question concerning "records" by later testifying:

". . . 'What I am saying is, we are looking for Mr. McFadden from the time we discovered he was a suspect. *During the course of our investigation we received fresh inputs as to new locations and new addresses.* We checked each of these out as the investigation progressed. That is what I am saying, sir.' (emphasis added). This explanation concerning addresses was repeated on redirect examination of Detective White, as follows: 'Q. Mr. White, do I understand in the course of your investigation according to your responses to Mr. Reif's questions, you received fresh input regarding various locations where Mr. McFadden might be found? A. Yes, sir. Q. And as a result of this fresh input you checked these addresses; is that correct sir? A. That's correct. Yes, sir.' . . ."

In *McFadden*, the court determined that the second limitation on prohibition against use of the reference to prior criminal activity, i. e., independent information other than police records, was met and affirmed the conviction.

In the instant case, we are confronted with a brief passing comment concerning checking "our records" for addresses.[2] We are of the opinion that this reference is not of such a

---

2. The comment in *Groce*, while brief, was more explicit in relating that defendant had a history of prior criminal conduct.

nature nor magnitude that prior criminal activity is reasonably inferable and, therefore, find no reversible error.

Appellant next argues that the trial court erred in allowing testimony concerning the defendant's prior possession of a knife. We do not agree. The basis of appellant's argument is that the testimony concerning his prior possession of a knife showed prior criminal conduct and, therefore, was violative of *Commonwealth v. Allen, supra.* The testimony which appellant complains of was that of John Kies, a witness to the altercation which resulted in the stabbing death of Cheryl McNeil. The testimony in relevant part is as follows:

"Q. Then what happened?

"A. Well, we started asking him what happened and he told us he was in a fight with this girl and another girl and a guy jumped in and he cut the one girl's arm. So then he just sort of turned around. He was in sort of like a daze. He just turned around, walked over to my car and got in and said, 'Take me to South Side.' So I took him over to South Side and dropped him off.

"Q. Did he indicate what he had cut this girl with?

"A. No, but he had his knife in his hand.

"Q. What hand did he have a knife in, if you recall, when you saw it first?

"A. The right, I would say. I'm not positive, though.

"Q. Can you describe this knife?

"A. It was yellow, about six inches long, closed position.

"Q. Pardon me? I didn't hear that last part of your answer.

"A. It was six inches long, closed.

"Q. Was it closed when you saw it?

"A. Yes.

"Q. All right.

"A. And there was tissue stuffed in the one end of it.

"Q. Where was this tissue stuffed?

"A. Where the blade breaks, you know, and goes into the case.

\* \* \* \* \* \*

"BY MR. McFALL:

"Q. Tell us when was the first time you ever had occasion to see this particular knife.

"MR. BLASCO: Objection, your Honor. It is still leading.

"THE COURT: Overruled.

"MR. ZIEV: Objection, your Honor, on the ground of relevancy.

"THE COURT: Overruled.

"(To the witness): Can you answer the question?

"THE WITNESS: Would you repeat it, please?

"MR. McFALL: Yes.

"Q. Can you tell us when in your lifetime was the first time you had occasion to see this knife?

"A. I can't specify a specific time, but I did see it on him before.

"Q. How many times had you had occasion to see this knife?

"MR. ZIEV: Objection, your Honor.

"THE COURT: Overruled.

"A. Just a couple.

"Q. And where was the knife when you saw it on the couple of occasions?

"MR. ZIEV: Objection.

"THE COURT: Overruled.

"A. In his pocket.

"Q. Pardon?

"A. In his pocket.

\* \* \* \* \* \*

"Q. On these prior occasions when you saw the knife, when it was shown to you, about how long before?

"A. Maybe a couple of weeks before, a month.

"MR. BLASCO: Objection. It's too remote, your Honor.

"THE COURT: Overruled.

\* \* \* \* \* \*

"A. When he showed me the knife, you want to know how he showed it to me?

"Q. Yes.

"A. Flipped it out.

"Q. What do you mean by flipped it out?

"A. You know how you can flip a knife out, you know, by snapping your wrist.

"Q. You're indicating with your hand that he snapped one hand?

"A. Right.

"Q. And what happened?

"A. The blade come out and locked in place.

"MR. McFALL: I have no further direct."

As was made clear in *Allen, supra,* evidence of defendant's prior criminal conduct may not be introduced as substantive evidence of the crime for which he is presently charged. In the instant case there is testimony concerning appellant's prior possession of the knife used in the stabbing. However, there is no testimony equating such prior possession of the knife as being in violation of the criminal laws of this Commonwealth. Testimony relating to possession of a knife does not in and of itself create a reasonable inference concerning prior criminal conduct. This being appellant's only argument concerning the admissibility of the knife, we find no reversible error.

Judgment of sentence affirmed.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The instant case is factually and legally indistinguishable from *Commonwealth v. Groce,* 452 Pa. 15, 303 A.2d 917 (1973). The jury in the instant case, just like the jury in *Groce,* could reasonably infer from the police officer's testimony that appellant had a prior record of criminal conduct. The police officer in the instant case very plainly stated that he looked through police records in order to locate an address at which appellant might be apprehended.

Moreover, the transcript of the instant case contains no mention of an "independent explanation" of the police possession of appellant's address such as was found by a majority in *Commonwealth v. McFadden*, 464 Pa. 265, 346 A.2d 550 (1975).

I would therefore reverse the judgment of sentence and grant appellant a new trial.