400 A.2d 173

**COMMONWEALTH of Pennsylvania**

v.

**Thomas CLAFFEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided March 23, 1979.

Robert F. Pappano, Assistant Public Defender, Media, for appellant.

D. Michael Emuryan, Assistant District Attorney, Chief, Law Unit, for Commonwealth, appellee.

454

Before WATKINS, President Judge and JACOBS, HOFF-MAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, President Judge:

A jury found appellant, Thomas Claffey, guilty of burglary.[1] Post-verdict motions were denied and a sentence of one to four years imprisonment was imposed. On this direct appeal it is asserted the trial court erred in refusing to grant a mistrial after the Commonwealth elicited testimony which allegedly implied that appellant had engaged in prior criminal activity.[2] We are not persuaded and, therefore, affirm.

The record reveals that on November 25, 1975, the residence of Richard Jacobs, 1107 Brookwood Road, Secane, Pennsylvania was burglarized. Entry to the house was gained via a second story bathroom window. Detective Grazel, of the Upper Darby Police Department, was called to the scene and obtained several latent fingerprints from the entry area. The events giving rise to appellant's allegation of error occurred during the direct examination of Detective Grazel, who testified as follows:

"By Mr. Coll: [Assistant District Attorney]

Q. Detective Grazel, did you ultimately send the lifts which, which you had taken from the window, to Washington?

A. That's correct.

Q. When did you send them to Washington?

A. I believe on February 3rd.

Q. 1976?

---

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3502.

2. Appellant further argues that the lower court erred in permitting an employee of the Federal Bureau of Investigation to testify as an expert witness regarding comparison of fingerprints lifted from the scene of the crime and those known to be appellant's. We have examined this contention and conclude that the trial judge did not abuse his discretion in finding the witness qualified to testify as an expert. See *Commonwealth v. Bennett*, 471 Pa. 41, 370 A.2d 373 (1977).

A. That's correct.

Q. And, where did you send them in Washington?

A. To the Federal Bureau of Investigation, Fingerprint Division.

Q. For what purpose?

A. To be compared.

MR. FOLEY: [Defense Attorney] Objection, Your Honor. I renew the motion.

THE COURT: Motion denied.

BY MR. COLL:

Q. Did you also send with the lifts inked fingerprints of the defendant, Thomas Claffey?

A. Yes.

MR. FOLEY: Objection, Your Honor. He is leading this witness.

THE COURT: Well, I think it is leading, Mr. Coll. Will you kindly rephrase your question?

MR. COLL: I will do that, Your Honor.

BY MR. COLL:

Q. Along with the lifts that you sent to Washington, did you also send—

What else did you send, if anything?

A. I sent a fingerprint card taken at our department."

"It is the appellant's position that the testimony above referred to could reasonably lead a jury to infer that the appellant's fingerprints were on file both at the Federal Bureau of Investigation in Washington, D. C., and also the Upper Darby Police Department and that they were so recorded as the result of prior criminal activity on the part of the appellant." [Appellant's Brief at 6]. We disagree.

It is axiomatic that the Commonwealth cannot introduce, except under circumstances not here applicable, evidence of different crimes against a defendant in a prosecution for a separate offense. *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973); *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). In determining whether this fundamental precept has been transgressed, "the operative question is

whether the jury 'could *reasonably* infer from the facts presented that the accused had engaged in prior criminal activity.'" *Commonwealth v. Groce, supra,* 452 Pa. at 19–20, 303 A.2d at 919 (Emphasis added), quoting from *Commonwealth v. Allen, supra,* 448 Pa. at 181, 292 A.2d 373. Instantly, we are of the opinion that the complained of testimony was not such that the jury could *reasonably* infer that appellant had a prior criminal record.

The record simply does not support appellant's position that Detective Grazel's testimony gave rise to an inference that appellant's fingerprints were on file both at the F.B.I. and the Upper Darby Police Department as a result of prior criminal activity. In the first place, neither the detective nor any other witness suggested that appellant's fingerprints were already in the possession of the F.B.I. In essence, Detective Grazel merely testified that latent fingerprints lifted from the scene of the crime along with inked fingerprints known to be appellant's, were forwarded to the F.B.I. for comparison. Most significantly, the trial testimony is absolutely devoid of any mention of the date when appellant was arrested for the instant burglary. Thus, although the jury knew that the fingerprint comparison was made several months after the burglary was committed, they were never informed that appellant was arrested *after* the comparison proved positive. Had the jury been apprised of both the date of appellant's arrest and the date of the comparison, then the detective's reference to a fingerprint card would have indeed given rise to a reasonable inference of a prior criminal offense on appellant's part.[3] Absent this critical testimony, however, we believe the only *reasonable* inference to be drawn was that the F.B.I. was requested to compare latent fingerprints found at the scene of the crime with those taken when appellant was arrested on the

**3.** In this situation, the Commonwealth would have been obliged to offer a reasonable explanation as to how the police were already in possession of appellant's fingerprints other than as a result of his prior criminal activity. See *Commonwealth v. McFadden,* 464 Pa. 265, 346 A.2d 550 (1975); *Commonwealth v. Allen, supra; Commonwealth v. Taylor,* 460 Pa. 616, 334 A.2d 261 (1975).

present burglary charge. In other words, as the prosecutor stated during a side bar conference regarding this issue: "I think if the jury simply knows they were taken subsequent to the crime in this case, there is no prejudicial implication involved there." N.T. 34. Indeed, in *Commonwealth v. Danzy*, 234 Pa.Super. 633, 340 A.2d 494 (1975), *allocatur denied* September 18, 1975, we implicitly recognized the lack of prejudice in these circumstances so long as the testimony merely reflected that the date of the fingerprint comparison was subsequent to the time of arrest.

In sum, as we most recently observed: "Because the testifying police officer did not state a specific date as to when the fingerprints were taken, no *reasonable* inference could be drawn by the jury that the fingerprints were taken as a consequence of prior criminal activity." *Commonwealth v. Harris*, 263 Pa.Super. 110, at 117–118, 397 A.2d 424, at 428 (1979).

Judgment of sentence affirmed.

PRICE, J., concurs in the result.

SPAETH, J., files a dissenting opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

Appellant argues that the lower court erred in refusing to grant his motion for a mistrial after testimony was presented implying prior criminal conduct on his part. The testimony was by Detective Grazel while testifying on direct examination for the Commonwealth:

BY MR. COLL: [Assistant District Attorney]

Q. Detective Grazel, did you ultimately send the lifts [*i. e.*, fingerprints,] which you had taken from the window to Washington?

A. That's correct.

Q. When did you send them to Washington?

A. I believe on February 3rd.

Q. 1976?

A. That's correct.

Q. And, where did you send them in Washington?

A. To the Federal Bureau of Investigation, Fingerprint Division.

Q. For what purpose?

MR. FOLEY: [Defense Attorney] Objection, Your Honor. I renew the motion.[1]

THE COURT: Motion denied.

BY MR. COLL:

Q. *Did you also send with the lifts inked fingerprints of the defendant, Thomas Claffey?*

A. *Yes.*

1. Earlier in the trial appellant had objected to other testimony by Detective Grazel in which the detective had referred to "the lifts" and "a fingerprint card":
   BY MR. COLL (Assistant District Attorney):
   Q. Now when you took Commonwealth's Exhibits 1, 2 and 3, [*i. e.,* the lifts] what did you do with them?
   A. I took them and compared them with the fingerprint card—
   MR. FOLEY: [Defense Attorney] Objection.
   Your Honor, may we have an offer of proof?
   THE COURT: You may.
   (Whereupon, there was a side bar conference, participated in by the Court and all counsel, which was as follows:
   MR. DiLULLO: If Your Honor please, I think at this time it would be appropriate, sir,—
   MR. COLL: Do you want an offer of proof or what?
   MR. DiLULLO: Yes, but I would also, I think I also would move for a mistrial, sir, in that the defendant or the witness has indicated that he took these prints and compared them with a card.
   At least under the case of Commonwealth versus Allen and the case of Commonwealth versus Groce, they would be an indication, sir, that there would be another card, which he did not compare, implying by the statement the defendant has had prior contacts with the law.
   And, specifically, the Groce case—
   THE COURT: Well, I think that is stretching it a little far. My fingerprints are on record, I think.
   MR. COLL: There hasn't been any reference to this defendant with respect to any comparisons yet.
   THE COURT: The motion for a mistrial is denied.
   N.T. 17–18.

MR. FOLEY: Objection, Your Honor. He is leading this witness.

THE COURT: Well, I think it is leading Mr. Coll. Will you kindly rephrase your question?

MR. COLL: I will do that, Your Honor.

BY MR. COLL:

Q. Along with the lifts that you sent to Washington, did you also send—
   What else did you send, if anything?

A. *I sent a fingerprint card taken at our department.*
   MR. FOLEY: *Objection and renew my motion again, sir.*

THE COURT: All right.

N.T. 20–22 (emphasis added).

Appellant contends that as a result of this testimony the jury could reasonably infer that the reason "the lifts" were sent to the F.B.I. for comparison was because appellant had engaged in prior criminal activity, of which the F.B.I. had a record. Appellant also contends that the jury could reasonably have drawn the same inference from Detective Grazel's reference to "a fingerprint card taken at our department." In response the Commonwealth contends that the jury could not have reasonably drawn an inference of prior criminal activity since the F.B.I. keeps fingerprints on file for a variety of reasons not associated with criminal activity, and since no specific reference was made to appellant when the local police department's fingerprint card was mentioned.[2]

---

2. In its opinion the lower court agreed with the Commonwealth's position. The lower court stated:

   [Appellant] contends that reference to sending latent fingerprints to the F.B.I. for comparison infers that the F.B.I. had the prints of [appellant] on file and, therefore, that the [appellant] had engaged in prior criminal activity. Assuming, as [appellant] suggests, that it could be inferred from this testimony of Detective Grazel that the F.B.I. had on file or was sent fingerprints of [appellant], it does not follow that this implies that [appellant] had engaged in prior criminal activities. Fingerprints are taken for many non-criminal activities and are routinely recorded. For example, fingerprints are taken and recorded for many federal, state and municipal employees, members of the military service, aliens, during routine

In *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973), the Supreme Court considered a similar challenge to the testimony of a police officer. The Court stated:

> [T]he operative question is whether the jury "could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." The answer to this question is clear upon consideration of the testimony of the officer when he said: "[I]n the years I have been a police officer I have heard the name Nino [Groce] before. I went through a great deal of [my] files, and all of a sudden I thought of the name Groce, . . ." Why would a police officer from the performance of his duties recognize a name? Why would a man's name be in police files? The obvious answer is the party had engaged in prior criminal activity, and we rule the jury could reasonably infer this from the testimony. Hence, prejudicial error was committed.
>
> *Id.*, 452 Pa. at 20, 303 A.2d at 919. (quoting *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972)).

So here, it must be acknowledged that the jury *could* reasonably infer that appellant had engaged in prior criminal activity. It is, of course, true, as the Commonwealth and the lower court say, that the F.B.I. *might* have had appellant's fingerprints for some reason other than appellant's prior criminal activity; thus, the jury *could* reasonably have inferred that the F.B.I. had appellant's fingerprints because (to quote from the lower court's suggestions) appellant had been a "member [ ] of the military service . . . [or involved in] routine security checks by private industry . . . ." However, because the jury could draw *one* rea-

security checks by private industry and for many local gun permits.

To preclude, on the basis of creating a prejudicial inference, reference in a trial to a fingerprint card containing the defendant's fingerprints being sent to or used by the Federal Bureau of Investigation for comparison would, in effect, prevent fingerprint evidence from being used in the prosecution of a criminal case. The Commonwealth must show that the latent fingerprints taken from the crime scene were compared with the known prints of [appellant].

sonable inference does not mean, as the Commonwealth and the lower court seem to say, that the jury could not *also* draw *another* reasonable inference.

This same observation may be made with respect to Detective Grazel's reference to "a fingerprint card taken at our department." I do not understand the Commonwealth's argument that no specific reference was made to appellant when the card was mentioned. Unless the card contained appellant's fingerprints, that is, unless the card did specifically refer to appellant, there could be no reason for mentioning it; and so the jury must have understood.

Moreover, it is difficult to imagine any reason why the local police (in contrast to the F.B.I.) would have had a record of appellant's fingerprints other than appellant's prior criminal conduct. Ignoring this difficulty, however, and assuming the jury could reasonably have inferred that the local police had the fingerprints for some reason other than appellant's prior criminal conduct, nevertheless, the jury could *also* reasonably have inferred that the police had the fingerprints because of appellant's prior criminal conduct.

If the Commonwealth had offered any evidence explaining why the F.B.I. and the local police had appellant's fingerprints, the case might well be different. For example, if the Commonwealth had shown that the F.B.I. had the fingerprints because it had a record of appellant's military service, then the Commonwealth would be able to argue that the jury could not have reasonably inferred that appellant had engaged in prior criminal conduct. Here, however, the Commonwealth failed to offer any such explanation. Given that failure, the fact that the jury could reasonably have inferred prior criminal conduct must be acknowledged.

Nor can I accept the lower court's suggestion that to preclude reference to "[appellant's] fingerprints being sent to or used by the Federal Bureau of Investigation for comparison would, in effect, prevent fingerprint evidence from being used in the prosecution of a criminal case." (Slip opinion of lower court at ——.) Without doubt, when the police find fingerprints at the scene of a crime, they will

often ask the F.B.I. if its records indicate whose the finger-prints are; if the F.B.I. is able to identify the fingerprints, the police will have a prime suspect. However, the fact that a given procedure represents a sound *investigative* proce-dure does not mean that it also represents a sound *trial* procedure. Thus, lie detector tests are often used in investi-gations, but the results may not be admitted at trial. *Com-monwealth v. Gee*, 467 Pa. 123, 141, 354 A.2d 875, 883 (1976). Here, indeed, no reason at all is offered by the Common-wealth in support of the reference at trial either to the F.B.I. or to the local police fingerprint records. Nor can I imagine any need for the reference. When appellant was arrested, the police could have taken his fingerprints; appel-lant could not have asserted any privilege against self-in-crimination. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *and see* Annotation, 28 A.L.R.2d 1115, § 14. Then, at trial the prosecutor could have called an expert witness to testify that comparison with the fingerprints obtained from appel-lant after his arrest demonstrated that the fingerprints found at the scene of the crime had been made by appellant. Thus, the reference to the F.B.I. and local police fingerprint records was not only in no way essential to trial of the case, but was unnecessary and readily avoidable; the reference added nothing to the trial except to suggest appellant's prior criminal activity. Since *Commonwealth v. Groce, supra,* makes plain that testimony is objectionable when the jury "could reasonably infer . . . that the accused had engaged in prior criminal activity," appellant's motion for a mistrial should have been granted.[3]

3. The majority holds that the jury could not have reasonably inferred that appellant had a prior criminal record from the Commonwealth's evidence since no mention was made during the trial of the date when appellant was arrested for the burglary. At 176. This holding ignores the effect of the objectionable testimony in the context of the entire case. The jury knew that the burglary occurred in November 1975 and that the fingerprints were not sent to the FBI until February 1976. They also knew, at least by the time the Commonwealth rested, that the only evidence linking appellant to the crime was the

This conclusion leads to the question whether, as the Commonwealth contends, the lower court's error in denying appellant's motion for a mistrial was harmless.

In its opinion the lower court gives the following summary of the evidence:

[O]n November 25, 1975, the home of Richard Jacobs, 1107 Brookwood Road, Secane, Pennsylvania, was burglarized. Entry was gained by pushing up a storm window and breaking a bathroom window on the second floor. Detective Grazel, of the Upper Darby Police Department, secured several latent fingerprints from the storm window. On February 3, 1976, the fingerprint evidence was submitted to the Federal Bureau of Investigation. A fingerprint expert employed by the Federal Bureau of Investigation testified that she compared the latent fingerprints sent to her with the fingerprint card sent by the Upper Darby Police Department of [appellant], and, *in her opinion* they were made by the same person. *The fingerprint evidence was the only evidence linking [appellant] to the burglary.*

At 173. (Emphasis added).

It is, of course, well settled that evidence of correspondence or lack of correspondence of fingerprints may be admissible in a criminal proceeding to establish identity. *Commonwealth v. Loomis*, 270 Pa. 254, 113 A. 428 (1921); *Commonwealth v. Albright*, 101 Pa.Super. 317 (1931); Annotation, 28 A.L.R.2d 1115, § 3. However, since the classification of fingerprints and the method of identifying and comparing them represent

similarity between his fingerprints and those found at the scene. *See* discussion *infra*. It may be that in some cases testimony concerning a fingerprint comparison will not enable a jury to infer that the defendant had a prior record for the reason that the jury has not been told the date of the defendant's arrest. Here, however, the natural import of the Commonwealth's evidence was that appellant became the focus of the police investigation only when his fingerprints were compared with those found on the scene. How did the police obtain appellant's fingerprints? Most likely, the jury could reasonably infer, from previous arrests.

a science requiring study, it is not only proper but necessary that witnesses of peculiar and special experience on the subject, that is, experts, compare and testify as to the identity of two sets of such prints.

Annotation, 28 A.L.R.2d 1115, 1145.

In other words, as the lower court acknowledges in its opinion, quoted *supra*, the only evidence of appellant's identity was opinion evidence.

This does not mean that the evidence against appellant was not sufficient. Even where, as here, the only evidence of identification is opinion evidence that a given fingerprint was made by the defendant, the evidence may be sufficient; whether it is or not will depend on the circumstances of each case. *Commonwealth v. Cichy*, 227 Pa.Super. 480, 323 A.2d 817 (1974). The issue, however, is not whether the opinion evidence was sufficient, but whether it was *so* sufficient, that is, so overwhelming, that the lower court's error in permitting other evidence of appellant's prior criminal conduct may be held to have been harmless error.

In *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), our Supreme Court made it clear that

an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless.

*Id.*, 476 Pa. at 405, 383 A.2d at 162.

The Court further stated that

an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a " 'reasonable possibility' " that an error " 'might have contributed to the conviction,' " the error is not harmless. . . .

*Id.*, 476 Pa. at 409, 383 A.2d at 164 (citations omitted).

When this test is applied to the facts here, it is apparent that the evidence of appellant's prior criminal conduct could have contributed to the jury's decision to convict appellant. Without any other evidence of identification, as for example that appellant had been seen in the area or had been found

in possession of something taken in the burglary, the jury was obliged to rely entirely upon the expert opinion that the fingerprints had been made by appellant. Whenever a jury must evaluate expert opinion, it must consider not only the expert's qualifications but also the quality of the data presented to the expert and the care with which the expert analyzed that data. As this court observed in *Commonwealth v. Albright, supra,* 101 Pa.Super. at 325,

> It [whether to accept the expert witness's opinion on identification] goes to the care exercised by the expert in comparing the fingerprints and the points of identity or similarity between them, and is for the jury.

Here, it is at least "a reasonable possibility," *Commonwealth v. Story, supra,* that because of the evidence of appellant's prior criminal conduct, the jury was disposed *against* appellant, which is to say that it was disposed *toward* the expert witness and therefore accepted the proffered opinion without critical evaluation.

I would reverse the judgment of sentence and remand for a new trial.